**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 2, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

CHELSEA FAMILY PHARMACY,
PLLC, individually and on behalf of
all others similarly situated,

　　　　Plaintiff–Appellee,

v.

MEDCO HEALTH SOLUTIONS,
INC.,

　　　　Defendant–Appellant.

No. 08-5103

---

**Appeal from the United States District Court**
**for the Northern District of Oklahoma**
**(D.C. No. 4:06-CV-00118-GKF-SAJ)**

---

Michael S. Lee, Howrey LLP (Mark Banner, Hall, Estill, Hardwick, Gable,
Golden & Nelson, P.C.; John D. Briggs and Michael G. Cowie, Howrey LLP, with
him on the briefs), Salt Lake City, Utah, for Defendant–Appellant.

Bradford D. Barron, Gibbon, Barron & Barron, P.C., (Bob L. Latham, Ken E.
Wagner, Marcus N. Ratcliff, and Allison L. Thompson, Latham, Wagner, Steele
& Lehman, P.C.; Richard D. Gibbon and Zachary T. Barron, Gibbon, Barron &
Barron, P.C., with him on the briefs), Tulsa, Oklahoma, for Plaintiff–Appellee.

---

Before **LUCERO**, **O'BRIEN**, and **GORSUCH**, Circuit Judges.

---

**LUCERO**, Circuit Judge.

This case requires us to construe the scope of an arbitration clause in a commercial contract. Before doing so, we must determine whether two factually distinct injuries pleaded in the same causes of action in a complaint constitute distinct "controversies or claims" whose arbitrability may be separately evaluated. We conclude that they do and hold that the complaint at issue includes two "controversies or claims," one of which must be arbitrated.

Chelsea Family Pharmacy ("Chelsea") is a local pharmacy serving retail customers. Medco Health Solutions, Inc. ("Medco") is a third party prescription drug program administrator that manages pharmacy benefits programs; contracts with local pharmacies, including Chelsea, to fill program members' prescriptions; and facilitates insurance reimbursement to the pharmacies. The agreement between the parties provides for arbitration of disputes "arising out of or relating to payments to [Chelsea] by Medco." Medco contends, based on the language of the agreement, that separate injuries alleged in the complaint cannot be treated separately for purposes of arbitration if they are styled as part of the same cause of action[1] in the complaint. We disagree. To distinguish between various claims[2] for purposes of the arbitration clause, we look to the substance of the factual

---

[1] Although the complaint labels the various causes of action as "counts," we do not adopt that terminology.

[2] For reasons explained below, infra note 7, we use the shorthand "claim" in place of the lengthier "controversy or claim."

allegations in the complaint rather than the legal labels the plaintiff applied to them. From the face of the complaint, we discern two distinct injuries constituting two distinct claims: (1) Medco unlawfully reimburses Chelsea at lower than the prevailing rate and (2) Medco operates a mail order prescription program in a manner that unlawfully harms Chelsea's competitiveness.

Chelsea's first claim, alleging inadequate reimbursement, relates to payments and thus must be arbitrated under the terms of the arbitration clause. Unlike the inadequate reimbursement injury, however, Medco's operation of an allegedly anticompetitive mail order business cannot be said to arise out of or relate to payments, and Medco does not argue to the contrary. It instead argues that because both injuries are conflated within each of several causes of action in Chelsea's complaint, they must stand or fall together. We reject this reasoning. Considering the claims independently, we conclude that the reimbursement claim is arbitrable but the mail order claim is not. Exercising jurisdiction under 9 U.S.C. § 16(a)(1)(A), we affirm in part and reverse in part.

**I**

In order to become a part of Medco's network of pharmacies, Chelsea signed a written agreement dictating the terms of the parties' relationship. Chelsea alleges this agreement unlawfully sets reimbursement rates below those prevailing in the marketplace. Moreover, Chelsea contends that the agreement illegally prevents Chelsea from competing with Medco's mail order pharmacy.

Under the terms of the agreement, Medco's mail order service may offer more favorable dispensing rates than Chelsea is permitted to offer, and Medco is able to provide certain services that Chelsea is contractually barred from providing. In sum, Chelsea alleges that Medco possesses undue bargaining power, which it uses to undermine Chelsea's ability to compete for the business of its own local customers.

Chelsea filed suit on its own behalf and for a putative class of all pharmacies in Oklahoma who have contractual agreements with Medco effective during the three years preceding filing of the amended complaint. In the complaint, Chelsea alleges the contract terms that set low reimbursement rates and prevent competition with Medco's mail order program constitute violations of the Oklahoma Third Party Prescription Act, Okla. Stat. tit. 15, § 788(a); breach of contract; and unfair business practices. The complaint sets forth one cause of action under each of these three legal theories; each addresses both reimbursement rates and the mail order program.

Chelsea and Medco's agreement incorporates a Pharmacy Services Manual and several additional schedules. Those schedules set the "payment rates" governing reimbursement to Chelsea for services it provides to individual members of the various pharmacy networks in which Chelsea has agreed to participate. In the Pharmacy Services Manual is an arbitration clause stating:

> Any controversy or claim arising out of or relating to payments to Pharmacy by Medco or audit issues, but not relating to termination of Pharmacy's Agreement with Medco or Pharmacy's Termination from Medco's Networks, that are not settled by the parties will be determined by arbitration involving three arbitrators, venued in Bergen County, New Jersey, in accordance with the Rules of the American Arbitration Association, and judgment upon the award rendered by the Arbitrators may be entered in any court having jurisdiction thereof. Any award of the Arbitrators will include reasonable costs and reasonable attorney's fees of the prevailing party. No award of the Arbitrators will prohibit Medco from exercising any rights Medco may have pursuant to its Agreement with Pharmacy or pursuant to law. No party will have a claim in arbitration or otherwise against the other for punitive or consequential damages or for loss of profits.

(Emphasis added). Based on that arbitration clause, Medco moved to stay the case in the district court and to compel arbitration under the Federal Arbitration Act ("FAA"), see 9 U.S.C. § 3, arguing that, based on Congress's intent to favor arbitration, the phrase "relating to payments" should be read broadly to encompass any claim that has payment as a component. Medco further urged that the core of each of Chelsea's claims was Medco's alleged failure to reimburse at prevailing rates, and thus, each claim was "related to payments" by Medco to Chelsea.

In response to the motion to stay, Chelsea countered that the gravamen of its complaint was that Medco engaged in unfair and anticompetitive practices. It further argued that the arbitration provision was a narrow one and that the present dispute fell outside the scope of the clause.

- 5 -

On initial consideration, the magistrate judge issued a report and recommendation, concluded that Chelsea's claims were not arbitrable under the parties' contract, and recommended that the district court deny a stay. The report and recommendation employed the framework for determining whether a dispute falls within the scope of an arbitration clause articulated in <u>Cummings v. Fedex Ground Package Systems, Inc.</u>, 404 F.3d 1258 (10th Cir. 2005). Medco filed objections to the magistrate's recommendation, and Chelsea filed a response.

In its Opinion and Order, the district court also adhered to our <u>Cummings</u> framework and found that the arbitration provision was narrow and included some disputes that could arise between the parties yet excluded others. In adopting the magistrate judge's report and recommendation, the court found that the clause was intended solely to resolve disputes over specific payments. On that basis, it concluded that the entirety of this dispute fell outside the scope of the clause and was not arbitrable.

**II**

Medco appeals, bringing to us the contention that this case should be stayed pending arbitration under the FAA. Because the agreement between Chelsea and Medco is "a contract evidencing a transaction involving commerce," the FAA governs whether particular disputes thereunder are arbitrable. 9 U.S.C. § 2. The sole issue presented is whether Chelsea's claims fall within the scope of the

- 6 -

arbitration agreement.  See § 3.[3]  We review de novo the district court's decision

to deny a stay pending arbitration.  Riley Mfg. Co. v. Anchor Glass Container

Corp., 157 F.3d 775, 779 (10th Cir. 1998).

## A

In construing the scope of an arbitration agreement, we "classify the

particular clause as either broad or narrow."  Cummings, 404 F.3d at 1261

(quoting Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc., 252

F.3d 218, 224 (2d Cir. 2001)).  This distinction furthers freedom of contract so

that parties are not "required to submit to arbitration any dispute which [they

have] not agreed so to submit."  AT&T Techs., Inc. v. Commc'ns Workers of

Am., 475 U.S. 643, 648 (1986) (quoting United Steelworkers of Am. v. Warrior &

Gulf Navigation Co., 363 U.S. 574, 582 (1960)); Cummings, 404 F.3d at 1262.

To determine the breadth of an arbitration clause we ask if "the parties clearly

---

[3] Title 9, section 3 of the United States Code provides:

> If any suit or proceeding be brought in any of the courts of the
> United States upon any issue referable to arbitration under an
> agreement in writing for such arbitration, the court in which
> such suit is pending, upon being satisfied that the issue
> involved in such suit or proceeding is referable to arbitration
> under such an agreement, shall on application of one of the
> parties stay the trial of the action until such arbitration has
> been had in accordance with the terms of the agreement,
> providing the applicant for the stay is not in default in
> proceeding with such arbitration.

(Emphasis added).

manifested an intent to narrowly limit arbitration to specific disputes" that might arise between them. Cummings, 404 F.3d at 1262. In Cummings, we considered an arbitration clause that governed "acts to terminate this Agreement . . . (but no others)." Id. at 1260. We held that by adopting the clause under analysis, the parties clearly manifested an intent to limit arbitration to disputes over termination. Thus, the clause was narrow and distinguishable from "the type of broad provision that refers all disputes arising out of a contract to arbitration." Id. at 1262 (quotation and alteration omitted).

In the present case, we are presented an arbitration clause similar to that in Cummings. Chelsea and Medco have adopted an arbitration clause governing "[a]ny controversy or claim arising out of or relating to payments to [Chelsea] by Medco or audit issues, but not relating to termination of [Chelsea]'s Agreement with Medco or [Chelsea]'s Termination from Medco's Networks." We recognize that this arbitration clause does not explicitly exclude all other disputes from arbitration as did that in Cummings. Nevertheless, it does exclude matters such as termination of the agreement[4] and limits itself to matters "arising out of or relating to payments." Such an explicit limitation of scope is analytically equivalent to an express exclusion of other issues. This differentiates the clause before us from the type of broad arbitration provision distinguished in Cummings.

_____

[4] Excluding certain categories of disputes from arbitration is not alone dispositive of whether the clause is broad or narrow, but it is indicative of an agreement to limit arbitration to specific disputes.

- 8 -

We conclude that the parties "clearly manifested an intent to narrowly limit arbitration to specific disputes," Cummings, 404 F.3d at 1262, and consider the clause at issue to be narrow in scope.

**B**

"Under a narrow arbitration clause, a dispute is subject to arbitration only if it relates to an issue that is on its face within the purview of the clause . . . ." Id. A dispute is not subject to arbitration if it involves matters that are "collateral" to those covered by the clause. Id. But even narrow arbitration clauses must be interpreted under the "liberal federal policy favoring arbitration agreements." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 625 (1985) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)); Cummings, 404 F.3d at 1262 (quotation omitted). We resolve doubts concerning the scope of arbitrable issues in favor of arbitration. United Steelworkers, 363 U.S. at 582-83; Cummings, 404 F.3d at 1262. When considering narrow arbitration clauses, this liberal policy does not create a presumption of arbitrability because the policy favoring arbitration "does not have the strong effect . . . that it would have if we were construing a broad arbitration clause." Cummings, 404 F.3d at 1262 (quotation omitted). With these principles in mind, we turn to whether the allegations in Chelsea's complaint fall within the scope of the narrow arbitration clause at issue.

Chelsea raises three causes of action in its complaint: violation of Oklahoma's Third Party Prescription Act, breach of contract, and unfair business practices. All allege the same two distinct harms.[5] All three causes of action allege that Medco reimburses Chelsea at less than the prevailing rates required by Oklahoma law. All also allege that Medco unlawfully restricts Chelsea's ability to compete with Medco's mail order pharmacy.

Medco contends that each of these causes of action in the complaint is indivisible. Although Medco concedes that a court may determine that some claims in a complaint are arbitrable while others are not, it contends that such an approach is permissible only when applicability of the arbitration clause differs by cause of action in the complaint rather than by subject matter within each cause of action.[6] Medco offers no citation for this proposition.

In order to determine whether a claim is arbitrable under the FAA, we evaluate the factual underpinnings of the complaint rather than merely considering

---

[5] A fourth cause of action listed in the complaint seeks injunctive relief but raises no substantive allegations of harm other than by incorporating the previous allegations.

[6] At oral argument, however, Medco conceded that separating the injuries and compelling arbitration for the reimbursement claim but not the claim relating to the mail order business "is certainly one approach that one could take to this case." Out of an abundance of caution, we nonetheless consider the arguments against this proposition presented in Medco's briefs.

the labels attached to each of the causes of action it contains.[7]  See P&P Indus.,

Inc. v. Sutter Corp., 179 F.3d 861, 871 (10th Cir. 1999) ("[I]n determining

whether a particular claim falls within the scope of the parties' arbitration

agreement, we focus on the factual allegations in the complaint rather than the

legal causes of action asserted." (quoting Genesco, Inc. v. T. Kakiuchi & Co., 815

F.2d 840, 846 (2d Cir. 1987))); Oldroyd v. Elmira Sav. Bank, FSB, 134 F.3d 72,

77 (2d Cir. 1998) (same); Am. Recovery Corp. v. Computerized Thermal Imaging,

Inc., 96 F.3d 88, 94 (4th Cir. 1996); Gregory v. Electro-Mech. Corp., 83 F.3d 382,

384 (11th Cir. 1996) (quoting Genesco, 815 F.2d at 846).  "If the allegations

underlying the claims touch matters covered by the parties' [arbitration

agreement], then those claims must be arbitrated, whatever the legal labels

_____

[7] Medco argues that a "controversy" is broader than a "claim" and that because the agreement between the parties assigns any "controversy or claim" relating to payments to arbitration, we must consider whether Chelsea's allegations of anticompetitive practices constitute part of the same "controversy" as its reimbursement allegations, even if these are not part of the same "claim." This argument is foreclosed by P&P Industries, Inc. v. Sutter Corp., 179 F.3d 861 (10th Cir. 1999), in which we interpreted an arbitration clause encompassing "any controversy, claim, or breach arising out of or relating to this agreement . . . ." Id. at 864 (emphasis added).  In that case, we treated this language as coextensive with the word "claim" standing alone and applied the language of the arbitration clause to each claim individually.  Similarly, in Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213 (1985), the Supreme Court interpreted an arbitration clause encompassing "any controversy . . . arising out of or relating to this contract or the breach thereof." Id. at 215 (emphasis added, alteration omitted).  The Court held that arbitration was required for some claims but not for others. Id. at 217-18.

- 11 -

attached to them." P&P Indus., Inc., 179 F.3d at 871 (quoting Genesco, 815 F.2d at 846) (quotation marks omitted); Oldroyd, 134 F.3d at 77 (same).[8]

While these authorities clearly require that we turn to the facts to determine which claims in a complaint must be arbitrated, they do not similarly insist that we do so in defining what claims the complaint alleges. To do otherwise, however, would undercut the policy of substance over form. Focusing on the facts rather than on a choice of legal labels prevents a creative and artful pleader from drafting around an otherwise-applicable arbitration clause. See Combined Energies v. CCI, Inc., 514 F.3d 168, 172 (1st Cir. 2008) ("[The plaintiff] cannot avoid arbitration by dint of artful pleading alone."); R.J. Griffin & Co. v. Beach Club II Homeowners Ass'n, 384 F.3d 157, 164 (4th Cir. 2004) (a party "may [not] use artful pleading to avoid arbitration"). This rationale applies with the same force to our initial discernment of a party's claims as to the application of an arbitration clause to each claim. By relying on the factual allegations to determine what claims are asserted in the complaint, we make explicit what has previously been implicit. See Coors Brewing Co. v. Molson Breweries, 51 F.3d 1511, 1513 (10th Cir. 1995) (dividing allegations of a complaint into three categories according to their factual allegations before determining which were arbitrable); see also

---

[8] Because we adopted the Second Circuit's interpretive approach to narrow arbitration clauses in Cummings, 404 F.3d at 1261 (quoting Louis Dreyfus Negoce S.A., 252 F.3d at 224), we consider that circuit's approach to be particularly helpful on this related point.

Becker v. Davis, 491 F.3d 1292, 1301 (11th Cir. 2007) ("While it would be much easier to do so, we will not send clearly non-arbitrable disputes to arbitration merely because a count, as pled, contains both arbitrable and non-arbitrable disputes.").

Following the stated approach, we conclude that the various allegations in the complaint before us subdivide into distinct factual harms. It is of no moment that these distinct harms are not pleaded as separate causes of action in the complaint.

## C

In examining the substance of Chelsea's pleadings, we discern but two distinct claims: One relates to Medco's reimbursement rates; the other to Medco's allegedly anticompetitive mail order business. We proceed to consider each, guided by the liberal policy favoring arbitration and the plain meaning of the contract.

## 1

As for the first claim, the inadequacy of Medco's reimbursement rates, we determine that it relates to an issue that is, on its face, within the purview of the arbitration clause. We acknowledge that although the clause has a narrow scope in the context of the overall agreement, it nonetheless is broadly inclusive when it comes to payments. The parties agreed to arbitrate "[a]ny controversy or claim arising out of or relating to payments to [Chelsea] by Medco." (Emphasis added).

The ordinary meaning of the phrase "relating to" is broad.[9] Morales v. Trans World Airlines, Inc., 504 U.S. 374, 383-84 (1992); Coregis Ins. Co. v. Am. Health Found., Inc., 241 F.3d 123, 128-29 (2d Cir. 2001); see also Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 398 (1967) (construing an arbitration clause with the language "[a]ny controversy or claim arising out of or relating to this Agreement" as a broad one).

Because the arbitration clause sweeps broadly within the category of payment disputes, we disagree with the district court that this clause solely covers disputes over specific payments. We find no such limiting language on the face of the contract. Unlike the district court, we decline to read the explicit exclusion of unrelated topics from the scope of arbitration as narrowing the scope of the language regarding payments. Those exclusions influenced our first stage inquiry that this was a narrow agreement, but that conclusion does not trump our inquiry regarding the scope of the phrase "arising out of or related to payments."

At bottom, Chelsea's claim contesting the contractual reimbursement rates is an allegation that Medco is not paying Chelsea enough money to comply with applicable law. Contract terms governing reimbursement from Medco to Chelsea

---

[9] Because "relating to" is broader than "arising out of," we need not consider the scope of the phrase "arising out of" in isolation. See Coregis Ins. Co. v. Am. Health Found., Inc., 241 F.3d 123, 128 (2d Cir. 2001) ("[T]he ordinary meaning of the term 'related to' . . . is broader than the term 'arising out of' . . . ."); Mediterranean Enters., Inc. v. Ssangyong Corp., 708 F.2d 1458, 1464 (9th Cir. 1983) (explaining that inclusion of the term "relating to" makes an arbitration clause broader than one including only the term "arising under").

use the term "payment rate." That Chelsea uses the term "reimbursement rate" in its pleadings rather than "payment rate" does not mask the true nature of the alleged injury. "Payments" is broad enough to include "reimbursements." Thus, based on the plain language of the contract and the policy favoring arbitration, the alleged harm of inadequate reimbursement rates "relates to an issue that is on its face within the purview of the clause." See Cummings, 404 F.3d at 1262. Accordingly, we hold that Chelsea's allegations regarding inadequate reimbursement rates must be arbitrated.

2

We turn to the second alleged injury—the use of contractual restrictions that prevent Chelsea from competing with Medco's mail order business. Chelsea alleges that Medco has violated the Third Party Prescription Act, breached contractual obligations, and engaged in unfair business practices "by placing restrictions on the manner in which [Chelsea] may engage in business and by allowing its own mail order pharmacy to compete against [Chelsea] without being burdened by the same restrictions."

Medco argues that the anticompetitive practices claim must be arbitrated because it cannot be separated from the reimbursement rates claim. Because these are separate claims, as explained in greater detail above, they need not stand or fall together. Medco does not assert that the anticompetitive practices claim, in its

own right, is arbitrable.  For those reasons, we agree with the district court that this claim is not arbitrable.

## III

We must yet decide if the district court should stay the entirety of the proceedings pending arbitration or stay only that portion of the proceedings that is arbitrable.  Stay of the entire proceeding is appropriate when resolution of the arbitrable claim will have a preclusive effect on the nonarbitrable claim or when "the arbitrable claims predominate the lawsuit and the nonarbitrable claims are of questionable merit."  Riley Mfg., 157 F.3d at 785 (quotation omitted).  "[T]he mere fact that piecemeal litigation results from the combination of arbitrable and nonarbitrable issues is not reason enough to stay [the] entire case."  Id. at 785.

Because the two claims in this case are distinct and unrelated, Chelsea's arbitrable illegal reimbursement claim cannot have a preclusive effect on the nonarbitrable mail order claim; one does not "predominate" over the other.  This being the case, it would be inappropriate to stay the mail order claim pending resolution of the reimbursement rate claim.

## IV

For the foregoing reasons, we **AFFIRM** the decision of the district court not to compel arbitration of Chelsea's mail order business claim, **REVERSE** the decision not to compel arbitration of Chelsea's inadequate reimbursement claim,

and **REMAND** with instructions to **STAY** only the latter claim pending arbitration.

08-5103, *Chelsea Family Pharmacy, PLLC v. Medco Health Solutions, Inc.*

**GORSUCH**, **J.**, concurring.


I am pleased to join Judge Lucero's lucid opinion for the court. Its analysis is thorough and its result dictated by our precedent. I write separately only to question this business of classifying arbitration clauses as "broad" or "narrow."

As the majority opinion notes, in *Cummings v. FedEx Ground Package Sys., Inc.*, 404 F.3d 1258 (10th Cir. 2005), we recently imported into our jurisprudence a test apparently conceived by the Second Circuit. *Id.* at 1261 (citing *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001)). According to the Second Circuit (and, after *Cummings*, now us), the first thing a court must do when deciding the arbitrability of a claim under the Federal Arbitration Act (FAA) is to classify the parties' arbitration clause as either "broad" or "narrow." If the clause is thought to be "broad" then "there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered." *Id.* (quoting *Louis Dreyfus*, 252 F.3d at 224). But if we deem a clause "narrow," we are required to "take care to carry out the specific and limited intent of [the] parties" and a dispute will be subject to arbitration "only if it relates to an issue that is on its face within the purview of the clause, and collateral matters will generally be beyond its purview." *Id.* at 1262 (citing *Louis Dreyfus*, 252 F.3d at 224). Under this regime, the strength of the presumption of arbitrability thus depends on a critical classification of the parties' clause: the presumption is

strong if the clause is deemed "broad," but weaker if the clause is deemed "narrow." *See id.* ("When an arbitration clause is narrowly drawn, the policy in favor of arbitration does not have the 'strong effect here that it would have if we were construing a broad arbitration clause.'") (quoting *McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co.*, 858 F.2d 825, 832 (2d Cir. 1988)).

As a panel of this court we are bound to abide our precedent compelling this taxonomic task, but respectfully I question its appropriateness and utility. On the first of these scores, the relevant statute, the FAA, admits no distinction between "broad" and "narrow" clauses. All arbitration clauses, Congress has told us, are equally "valid, irrevocable, and enforceable." 9 U.S.C. § 2. There is nothing in the language of the Act that suggests some clauses are more equal than others – a sort of four legs good, two legs bad. In *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983), the Supreme Court recognized precisely this point, holding that the FAA embodies "a liberal federal policy favoring arbitration agreements" applicable to *all* agreements within the Act's purview. *Id.* at 24. Neither Congress nor the Court, then, has suggested that we should engage in the scholastic task of classifying the parties' clause according to some abstract taxonomy, let alone as a first and necessary step in any arbitration dispute. Nor have they given us leave to vary the strength of the presumption of arbitrability based on the results of such a classification. It seems to me that we ought not be in the business of burdening a statute with words Congress has not written or

-2-

inventing a test the Supreme Court has not endorsed. For just these reasons, the Eleventh Circuit has rejected the notion that the strength of the presumption of arbitrability hinges on a clause being classified as broad versus narrow. *Ivax Corp. v. B. Braun of Am.*, 286 F.3d 1309, 1320 n.23 (11th Cir. 2002) ("It appears to us . . . that the Court in *Moses Cone* made no such distinction" between broad and narrow clauses.).

Not only is this categorization business and its resulting effect on the presumption of arbitration without a basis in the FAA or Supreme Court precedent, the utility of such an undertaking, as the Seventh Circuit has observed, "is dubious at best." *Int'l Bhd. of Elec. Workers v. Illinois Bell Tel. Co.*, 491 F.3d 685, 688 (7th Cir. 2007). The question of arbitrability is simply and always a matter of straightforward contract interpretation. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) (arbitration is a "matter of contract"); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991) (purpose of FAA was "to place arbitration agreements on the same footing as other contracts"). No additional taxonomies or tests are needed for this long familiar enterprise. When the arbitrability of a particular matter is plain on the face of the parties' agreement, the agreement is enforceable according to its terms – whether the arbitration clause is "broad" or "narrow" or somewhere in between (where, if we are to be frank, many clauses will fall). If and to the degree an agreement contains some residual ambiguity, that's when the *Moses Cone* presumption of arbitrability

applies – and applies evenhandedly. We are told by the Supreme Court, again categorically, that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses Cone*, 460 U.S. at 24-25. An artificial dichotomy should not replace reasoned analysis of the parties' contractual agreement. It ought not be the case that, simply because we hold an arbitration clause to be "broad," we automatically have license, as *Cummings* suggests, to send "collateral matters" to arbitration even if those matters plainly fall outside the boundaries of the parties' arbitration clause. Neither ought it be the case that we "take care to carry out the specific and limited intent of [the] parties," only when faced with a "narrow" agreement, as *Cummings* implies. Our job is always to enforce the parties' intent and, absent such clear intent, apply the presumption of arbitrability.

Though the result in this case is the same whether or not we apply *Cummings*, and thus the judgment reached by the court today is surely right, it seems to me we have made more and needless work for ourselves in arbitration cases in having to peg clauses "broad" or "narrow." Conventional tools of contract interpretation are sufficient to the task of deciding these cases, the only ones authorized by statute or the Supreme Court, and in no need of adornment.