**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 19, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

HUNGRY HORSE LLC, a New
Mexico limited liability company,

        Plaintiff - Appellant,

v.

E LIGHT ELECTRIC SERVICES,
INC., a Colorado corporation,

        Defendant - Appellee.

No. 13-1425
(D.C. No. 1:12-CV-02974-REB)
(D. Colorado)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **TYMKOVICH**, and **McHUGH**, Circuit Judges.

This appeal arises out of the arbitration of a construction dispute between a

subcontractor, Hungry Horse LLC, and a prime contractor, E Light Electric

Services, Inc. (E Light). Hungry Horse claims the district court erred in denying

its motion to vacate the arbitration award because the arbitration panel exceeded

its authority. Exercising jurisdiction under 9 U.S.C. § 16(a)(3), we affirm.

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 32.1.

## BACKGROUND

E Light engaged Hungry Horse to perform subcontractor duties on two solar panel projects in New Mexico. Toward completion of the projects, a dispute arose between the two regarding the amount Hungry Horse was owed for work completed under the subcontract and for additional work. Hungry Horse filed mechanic's liens against the projects, claiming it was owed approximately $2.8 million.

## I.     Mediation Proceedings

The parties first attempted to resolve their dispute through mediation. As part of that process, Hungry Horse and E Light each filed a written mediation statement, outlining their positions on the proper interpretation of the contract, the scope of the work performed, and the validity of the mechanic's liens. Neither party raised any issues with respect to Hungry Horse's contractor's license in its written mediation statement. When the mediation failed, the parties stipulated to submit their dispute to binding arbitration.

## II.     Arbitration Proceedings

Hungry Horse and E Light entered into an arbitration agreement that provides:

> Pursuant to the statements made at the settlement conference held January 25, 2012, this is to confirm the Stipulation reached in the above-captioned case upon the following terms:

> 1. The parties agree to binding arbitration of all disputed issues including the issues related to the Mechanics Lien and Bond . . . .

Aplt. App. 272. The parties further agreed the arbitration would be held in Colorado but governed by New Mexico law pursuant to the forum selection and choice of law provisions of their construction agreement.

To recover in a suit for compensation in New Mexico, a contractor must "alleg[e] and prov[e] that such contractor was a duly licensed contractor at the time the alleged cause of action arose." N.M. Stat. § 60-13-30(A); *see also id.* § 60-13-30(B) (stating that any contractor operating without a required license "shall have no right to file or claim any mechanic's lien"). Accordingly, Hungry Horse's statement of claims filed with the arbitration panel included an allegation stating, "[Hungry Horse] is licensed to undertake the construction activities required by the expressed and implied agreement between the parties to this dispute." Aplt. App. 147. In its initial answer to Hungry Horse's statement of claims, E Light indicated it lacked sufficient information to confirm, and therefore denied, Hungry Horse's allegation with respect to its license. It also asserted affirmative defenses that Hungry Horse "failed to fulfill all conditions precedent to its right to assert its mechanic's liens" and that Hungry Horse's "mechanic's liens are invalid and unenforceable under applicable law." Aplt. App. 161. After discovery, E Light filed a supplemental answer to Hungry

Horse's statement of claims in which it asserted as an affirmative defense that Hungry Horse was not duly licensed (the duly licensed issue).

During the arbitration proceedings, E Light argued Hungry Horse did not have the correct license for the type of work performed and the license it did hold never should have been issued. In support of the latter claim, E Light relied on New Mexico's requirement that no construction license be issued unless the director of the New Mexico Construction Industries Division of the Regulations and Licensing Department (Division) is satisfied that an applicant employs or is owned by a qualifying party. N.M. Stat. § 60-13-14(A); N.M. Admin. Code R. § 14.6.3.8. Under New Mexico law, a "qualifying party" is a licensed individual "who is responsible for the licensee's compliance" with New Mexico construction "regulations, codes, and standards." N.M. Stat. § 60-13-2(E).

In its license application, Hungry Horse had listed Mr. Stokes, a New Mexico contractor, as its qualifying party. Although Mr. Stokes and a company he owned had valid New Mexico contractor's licenses, E Light claimed Mr. Stokes had no involvement in the solar projects and was neither an owner nor employee of Hungry Horse. At the arbitration hearing, E Light presented evidence that Hungry Horse had paid Mr. Stokes's company $1,500 to use his name on Hungry Horse's license application. E Light argued that under these facts, Hungry Horse was not duly licensed and could not recover on its compensation claims.

Hungry Horse objected to any inquiry by the arbitration panel into whether its construction license had been properly issued, arguing the panel was empowered to consider only whether the license covered the type of work performed. The arbitration panel disagreed and found Mr. Stokes had never been an owner or employee of Hungry Horse. Because Hungry Horse was not owned by and did not employ a qualifying party, the panel treated Hungry Horse as an unlicensed contractor and denied its claims for unpaid construction work. The panel did award Hungry Horse $350,000 for supplying materials to the solar panel projects, a task which did not require a license.

## III.    District Court Proceedings

Hungry Horse filed an action to vacate the arbitration award, alleging the arbitrators "exceeded their powers" in violation of the Federal Arbitration Act (FAA), 9 U.S.C. § 10(a)(4). Hungry Horse argued the Division had the exclusive jurisdiction to issue contractor licenses, thereby precluding the arbitration panel from considering whether Hungry Horse's license had been properly issued. Hungry Horse also claimed the arbitration panel had revoked the license issued to Hungry Horse and that only the New Mexico Construction Industries Commission (Commission) had the power to do so.

The district court denied Hungry Horse's motion to vacate, concluding the panel had acted within its broad authority. The district court explained the panel properly decided whether Hungry Horse was duly licensed as part of its

-5-

determination of whether Hungry Horse could recover additional compensation from E Light. It further found the panel did not revoke Hungry Horse's license, but merely refused to treat Hungry Horse as duly licensed with respect to the work performed on the solar panel projects. Accordingly, the district court refused to vacate the arbitration award. Hungry Horse appeals.

**DISCUSSION**

When considering a district court's decision on a motion to vacate an arbitration award, we review the court's conclusions of law de novo and its findings of fact for clear error. *Bowen v. Amoco Pipeline Co.*, 254 F.3d 925, 931 (10th Cir. 2001). Our review of the underlying arbitration award, however, is far more limited. *Id.* We "'give extreme deference'" to the decision of the arbitration panel. *Burlington Northern and Santa Fe Ry. Co. v. Public Service Co. of Oklahoma,* 636 F.3d 562, 567 (10th Cir. 2010) (quoting *Brown v. Coleman Co.,* 220 F.3d 1180, 1182 (10th Cir. 2000)). Indeed, this "highly deferential standard" is one of the "narrowest known to the law." *Bowen*, 254 F.3d at 932 (internal quotation marks omitted). As a result, once an arbitration award has been entered, it is not easily vacated. *See Oxford Health Plans LLC v. Sutter,* ___ U.S. ___, 133 S. Ct. 2064, 2068 (2013) ("Under the FAA, courts may vacate an arbitrator's decision 'only in very unusual circumstances.'" (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942 (1995))); *see also Burlington*, 636

F.3d at 567; *Bowen*, 254 F.3d at 932. To hold otherwise would defeat arbitration's goal of speedy and final resolution of disputes and create a system in which "arbitration would become 'merely a prelude to a more cumbersome and time-consuming judicial review process.'" *Oxford Health Plans*, 133 S. Ct. at 2068 (quoting *Hall Street Associates, LLC v. Mattel, Inc.*, 552 U.S. 576, 588 (2008)).

Hungry Horse contends we should vacate the award under this narrow standard of review because, "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4).[1] It claims the arbitration panel lacked authority to consider whether Hungry Horse's license was properly issued and also exceeded its power by invading the exclusive jurisdiction of the Commission and revoking Hungry Horse's license.

## I.    Arbitrability and Authority

In considering the limits of an arbitration panel's power, we apply different standards of review to questions of arbitrability than to questions of the extent of the panel's authority in deciding arbitrable issues. *See Burlington*, 636 F.3d at

---

[1]Section 10 of the FAA allows an arbitration award to be vacated if: (1) "the award was procured by corruption, fraud, or undue means"; (2) "there was evident partiality or corruption in the arbitrators"; (3) the "arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced"; or (4) "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a). Hungry Horse relies only on subsection 10(a)(4).

-7-

567–68. The Supreme Court has explained that the initial question of whether the parties "agreed to arbitrate the merits" of their dispute is "about the *arbitrability* of the dispute," which turns on the scope of the arbitration agreement. *See First Options*, 514 U.S. at 942 (emphasis in original). Unless the parties have expressly agreed to submit the question of arbitrability to the arbitration panel, the court must independently decide that preliminary question based on ordinary principles of state contract formation law. *See id.* at 943–44. In determining whether the particular issue is arbitrable, the district court should resolve any doubts about the scope of the arbitration agreement in favor of arbitration. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 626 (1985). We review a district court's arbitrability decision concerning the scope of the arbitrable issues de novo. *First Options*, 514 U.S. at 941, 947–49 (approving the circuit court's de novo review of the arbitrability question).

Once the court determines that the parties agreed to submit an issue to arbitration, we afford the arbitration panel "extreme deference" regarding the extent of its authority to decide the arbitrable issue. *See Burlington*, 636 F.3d at 568 (citing *Schoenduve Corp. v. Lucent Techs., Inc.*, 442 F.3d 727, 733 (9th Cir. 2006); *Major League Umpires Ass'n v. American League of Prof'l Baseball Clubs*, 357 F.3d 272, 279 (3d Cir. 2004)). We have referred to this second question as an inquiry into the "scope of the [arbitration panel's] authority,"

because it focuses on the permissible extent of the arbitration panel's inquiry when deciding the arbitrable issue. *Burlington*, 636 F.3d at 569.

If an issue is arbitrable and the arbitration panel renders a decision on the merits, the circumstances under which the award can be set aside as exceeding the arbitrator's powers are quite limited. *See Oxford Health Plans*, 133 S. Ct. at 2068. "Only if the arbitrator acts outside the scope of his contractually delegated authority—issuing an award that simply reflects his own notions of economic justice rather than drawing its essence from the contract—may a court overturn his determination." *Id.* at 2068 (brackets and internal quotation marks omitted); *see also Local No. 7 United Food & Commercial Workers Int'l Union v. King Soopers, Inc.*, 222 F.3d 1223, 1226–27 (10th Cir. 2000).

## II. Nature of this Dispute

### A. Arbitrability: Scope of the Arbitration Agreement

Hungry Horse admits in its reply brief on appeal it "never contested the authority of the Panel to determine if [it] was duly licensed," and it "was required to prove [it] was 'duly licensed'" to recover on its claims for additional compensation. Aplt. Reply Br. 12. Thus, there is no dispute the duly licensed issue was arbitrable. Likewise, our independent analysis of whether the duly licensed question falls within the scope of the parties' arbitration agreement is consistent with Hungry Horse's concession. *See Burlington*, 636 F.3d at 569–70 & n.3 (finding the appellant conceded it "expressly agreed to allow the arbitration

board to consider the rate floor issue," but proceeding to consider the language of the arbitration agreement independently of that concession).

Whether a dispute falls within the scope of an agreement's arbitration clause is determined by first "'classify[ing] the particular clause as either broad or narrow.'" *Cummings v. FedEx Ground Package Sys., Inc.*, 404 F.3d 1258, 1261 (10th Cir. 2005) (quoting *Louis Dreyfus Negoce SA v. Blystad Shipping & Trading, Inc.*, 252 F.3d 218, 224 (2d Cir. 2001)); *see also Burlington*, 636 F.3d at 569. If the clause is narrow, we must "determine whether the dispute is over an issue that is on its face within the purview of the clause, or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause." *Cummings*, 404 F.3d at 1261 (internal quotation marks omitted). Where the clause in the parties' agreement is narrow, "a collateral matter will generally be ruled beyond its purview." *Id.* (emphasis omitted) (internal quotation marks omitted). In contrast, where the arbitration clause is broad, "there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it." *Id.* (internal quotation marks omitted).

"To determine the breadth of an arbitration clause, we ask if the parties clearly manifested an intent to narrowly limit arbitration to specific disputes that might arise between them." *Chelsea Family Pharm., PLLC v. Medco Health Solutions, Inc.*, 567 F.3d 1191, 1196 (10th Cir. 2009). Agreements using language

-10-

like "disputes of any nature or character" or "any and all disputes" have been held to be broad. *McDonnell Douglas Finance Corp. v. Pa. Power & Light Co.*, 858 F.2d 825, 832 (2d Cir. 1988) (internal quotation marks omitted);[2] *see also Newmont U.S.A. Ltd. v. Insurance Co. of North America*, 615 F.3d 1268, 1274–75 & n.5 (10th Cir. 2010) (stating the phrase "arising out of" a contract is generally construed broadly (internal quotation marks omitted)); *Rochdale Village, Inc. v. Public Service Employees Union, Local No. 80*, 605 F.2d 1290, 1295 (2d Cir. 1979).

Hungry Horse and E Light agreed to "binding arbitration of all disputed issues including the issues related to the Mechanics Lien and Bond." We agree with E Light that this is a broad arbitration provision. It broadly refers to "all disputed issues," listing two specific examples, the mechanic's lien and bond, but does not expressly indicate that no issues other than those specifically identified are subject to arbitration. *Cf. Burlington*, 636 F.3d at 566 (involving an agreement that the arbitration board "shall not consider any claims . . . other than [that] referenced in (a) above"); *Cummings*, 404 F.3d at 1260, 1262 (involving an

---

[2]Because we adopted our scope-of-agreement test from the Second Circuit, *see Cummings v. FedEx Ground Package System, Inc.*, 404 F.3d 1258, 1261 (10th Cir. 2005) (quoting *Louis Dreyfus Negoce SA v. Blystad Shipping & Trading, Inc.*, 252 F.3d 218, 224 (2d Cir. 2001)), we consider Second Circuit opinions particularly helpful in applying the test. *Chelsea Family Pharm., PLLC v. Medco Health Solutions, Inc.*, 567 F.3d 1191, 1198 n.8 (10th Cir. 2009).

-11-

agreement stating that "each such disagreement (but no others) shall be settled by arbitration").

Hungry Horse relies on the arbitration agreement's inclusion of the phrase, "[p]ursuant to the statements made at the settlement conference," to argue the issues submitted to the arbitration panel were limited to those discussed at mediation. Aplt. Br. 17–18. We need not consider this argument because Hungry Horse did not raise it until its reply brief below and the district court did not address it. *See FDIC v. Noel*, 177 F.3d 911, 915–16 (10th Cir. 1999) (holding that arguments first raised in reply are waived when not addressed by the district court). Even if we were inclined to consider the merits of Hungry Horse's argument, it would be unavailing.

The introductory language of the arbitration clause indicates only that the parties reached an agreement at the settlement conference to arbitrate; the issues they agreed to arbitrate are identified in the plain language that follows. *See First Options*, 514 U.S. at 943–44 (arbitrability is to be determined by ordinary principles of state contract law); *ConocoPhillips Co. v. Lyons*, 2013-NMSC-009, ¶ 23, 299 P.3d 844 ("The purpose, meaning[,] and intent of the parties to a contract is to be deduced from the language employed by them; and where such language is not ambiguous, it is conclusive." (internal quotation marks omitted)); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983) ("[A]ny doubts concerning the scope of arbitrable issues should be

-12-

resolved in favor of arbitration."). That language submits any disputed issues to the arbitration panel and expressly indicates such issues include those "related to the Mechanics Lien."

As discussed, in New Mexico, a contractor may not recover on a compensation claim unless it proves it was duly licensed at the time the work was performed. *See* N.M. Stat. § 60-13-30(A). During the arbitration proceedings, E Light disputed Hungry Horse's claim it was duly licensed and placed that issue squarely before the panel. Thus, the duly licensed issue is a disputed issue and "on its face within the purview of the [arbitration] clause." *Cummings*, 404 F.3d at 1261 (internal quotation marks omitted).

Even if the duly licensed issue were collateral, it would be arbitrable. Given the broad language of the arbitration clause, we presume collateral matters implicating issues of contract construction or the parties' rights and obligations under the subcontract fall within the scope of the arbitration agreement. *Burlington*, 636 F.3d at 569. "[A] collateral issue . . . is somehow connected to the main agreement that contains the arbitration clause." *Burlington*, 636 F.3d at 569. The duly licensed issue is somehow connected to the arbitration agreement because Hungry Horse needed to prove it was duly licensed as an element of its claim for compensation. *See* N.M. Stat. § 60-13-30. Similarly, Hungry Horse's rights and E Light's obligations under the construction contract are implicated because Hungry Horse cannot recover on its mechanic's lien claims without

-13-

proving it is duly licensed. The arbitration panel, therefore, had the authority to decide the question. *See Louis Dreyfus Negoce*, 252 F.3d at 228–29 (holding collateral agreements—letters of indemnity—were within the scope of a broad arbitration clause in a contract because the matter of indemnity implicated clauses in the contract).

Whether we resolve the arbitrability question based on Hungry Horse's concession or by construction of the arbitration agreement's broad arbitration provision, we reach the conclusion the duly licensed issue was arbitrable.

### B. Authority: Scope of the Arbitration Panel's Inquiry

In characterizing the issue on appeal, Hungry Horse states the parties have a "fundamental disagreement as to what one must prove to meet its burden of establishing the contractor is 'duly licensed.'" Aplt. Reply Br. 12. Accordingly, the issue before us is whether the arbitration panel had the authority to consider the circumstances under which Hungry Horse obtained its license in determining whether it was duly licensed when it performed work on the solar panel projects. Although Hungry Horse frames this dispute as a question of arbitrability, we are convinced it is a question of the proper extent of the panel's authority to decide the "duly licensed" issue Hungry Horse admits was submitted to arbitration. *See Burlington*, 636 F.3d at 568 (rejecting a party's "attempts to garner a more favorable standard of review by masquerading its scope of authority claims as an arbitrability claim"). In this circuit, the arbitration panel is entitled to extreme

deference in setting the bounds of its authority to decide an issue submitted to arbitration. *Id.*

For example, in *Burlington*, the Public Service Company of Oklahoma (PSO) and Burlington Northern and Santa Fe Railway Company (BNSF) disagreed on the proper interpretation of the rate provisions governing the amount due to BNSF under a coal transportation agreement. PSO calculated the rate using an amended rate adjustment procedure agreed to in connection with the resolution of a prior dispute. *Id.* at 566. BNSF sought a higher amount based on a "rate floor" of $11.77 per ton included in the pre-amendment agreement. *Id.* Eventually, the parties asked an arbitration board to adjudicate: 1) BNSF's claim the rate could not be less than $11.77 per ton; and 2) all of PSO's defenses to BNSF's claim. The arbitration agreement further provided the arbitration board "shall not consider any [other] claims by BNSF and PSO." *See id.* The arbitration board issued an award holding the rate floor in the pre-amendment agreement had been extinguished when the parties adopted the amended rate adjustment procedure. *Id.* at 566–67. BNSF brought a motion to vacate the award in the district court, claiming the arbitration board had exceeded its powers by interpreting the rate floor provision of the prior contract. *Id.* at 567. The district court denied the motion to vacate. *Id.*

This court affirmed. We first rejected BNSF's attempt to characterize the question on appeal as one of arbitrability. *Id.* at 568. Because BNSF's claims and

PSO's defenses were arbitrable, we held, "the board's determination that it had the authority to declare no rate floor provision existed is entitled to the same 'extreme deference' as its determinations on the merits." *Id.*; *see also id.* at 569 ("After the district court independently concluded the parties' rate dispute was arbitrable, it correctly applied a deferential standard of review to the board's determination of the scope of its authority.").

The same level of deference is appropriate here. The parties agree the duly licensed issue was arbitrable. Thus, the arbitration panel's implicit "determination that it had the authority to declare" no license should have been issued to Hungry Horse is entitled to "extreme deference." *See id.* at 568. Under that standard, we cannot say the panel exceeded its powers by considering the circumstances under which Hungry Horse obtained its contractor's license.

## C. Correctness of the Arbitration Panel's Decision

Finally, Hungry Horse argues the arbitration panel exceeded its powers because the Division and the Commission have exclusive jurisdiction to issue licenses in the first instance and to review or revoke licensing decisions. Aplt. Br. 19–20 (citing N.M. Stat. §§ 60-13-12, -14, -15, -30). In particular, Hungry Horse claims the arbitration panel's decision is contrary to New Mexico's statutory scheme and the legal decisions addressing the duly licensed requirement in the context of contractor claims. This challenge is appropriately considered an attack

on the merits of the arbitration panel's decision that Hungry Horse was not duly licensed when it performed the work on the solar projects.

In such circumstances, Hungry Horse "bears a heavy burden" in seeking relief under section 10(a)(4) of the FAA. *See Oxford Health Plans*, 133 S. Ct. at 2068. "It is not enough . . . to show that the [arbitrator] committed an error—or even a serious error." *Id.* (alteration and omission in original); *see also Burlington*, 636 F.3d at 568 (holding the arbitrator's determination of the extent of the inquiry is entitled to the same extreme deference as the arbitrator's merits decision). Section 10(a)(4) "permits courts to vacate an arbitral decision only when the arbitrator strayed from his delegated task . . . , not when he performed that task poorly." *Oxford Health Plans*, 133 S. Ct. at 2070; *see also Stolt–Nielsen SA v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671–72 (2010). Because the panel was "arguably" addressing the duly licensed issue—and not dispensing its own brand of justice—when it determined Hungry Horse's license should not have been issued, its decision must stand regardless of our view of the merits. *See Oxford Health Plans*, 133 S. Ct. at 2068; *cf. Wells Fargo Bank, NA v. WMR e-PIN, LLC*, 653 F.3d 702 (8th Cir. 2011) (holding where the parties submitted issue of misappropriation of trade secrets to arbitration and argued inventorship in their arbitration briefs, the panel could consider the issue of inventorship despite the fact inventorship decisions are reserved exclusively to the United States Patent and Trademark Office).

# CONCLUSION

Because the duly licensed issue was arbitrable, we afford extreme deference to the panel's determination of the proper extent of the inquiry necessary to decide that question and to its decision on the merits. Hungry Horse has not demonstrated that the district court erred in refusing to vacate the arbitration award.

AFFIRMED.

ENTERED FOR THE COURT


Carolyn B. McHugh
Circuit Judge