[Civ. No. 59661. Second Dist., Div. Five. May 6, 1981.]

FESS PARKER et al., Plaintiffs and Respondents, v.
TWENTIETH CENTURY-FOX FILM CORPORATION et al.,
Defendants and Appellants.

896

**COUNSEL**

Gibson, Dunn & Crutcher, Robert S. Warren, Richard Chernick and Ann R. Todd for Defendants and Appellants.

Cavalleto, Webster, Mullen & McCaughey, Bargiel & Carlson and Charles S. Bargiel for Plaintiffs and Respondents.

## Opinion

**HASTINGS, J.**—This is an appeal by Twentieth Century-Fox Film Corporation (Fox) and other defendants[1] from an order denying a petition to compel arbitration in a lawsuit brought by plaintiffs Fess Parker and Arcola Pictures Corporation, alleging 11 causes of action arising out of a joint venture between Fespar Enterprises, Inc. (Fespar),[2] Arcola Pictures Corporation (Arcola) and Fox.

### Facts

Effective April 15, 1964, Parker, Arcola and Fox entered into a written joint venture agreement (joint venture) known as "The American Tradition Company" to produce, distribute and otherwise exploit a film television series entitled "Daniel Boone." Arcola agreed to furnish the executive producer of the series or such other person as the parties mutually designated. Parker agreed to engage in his name and for the benefit of the joint venture the continuing series players, writers, directors and other production personnel. Fox agreed to furnish all financing (except to the extent the parties made a capital contribution to the venture) for the production of the series. Fox also agreed to furnish facilities, services and personnel located at Fox's studios or elsewhere as might be required in connection with the production of the episode and the series.

All net profits derived from the sale, lease, license or other exploitation of the series were to be divided as follows: Parker 40 percent, Arcola 26 2/3 percent and Fox 33 1/3 percent.

The joint venture provided that net profits were to be computed by Fox based upon broadcast years and Arcola's and Parker's shares were to be distributed by Fox within 90 days following the end of each broadcast year so long as the series was distributed on a syndication ba-

---

[1]Twentieth Century-Fox Television, Inc. was consolidated into Twentieth Century-Fox Film Corporation on or about April 3, 1968. Twentieth Century-Fox Film Corporation became successor in interest to and assignee of Fox-TV. The other defendants in the action, who are not parties to this appeal, are Zieglar-Ross Agency, a California corporation and Zieglar-Ross Agency, Inc., a California Corporation (Zieglar-Ross).

[2]In 1973, all rights, title and interest in Fespar, a corporation, were assigned to Fess Parker. The original joint venture agreement giving rise to the present litigation was entered into in 1964 between Arcola, Fespar and Fox-TV. Due to the subsequent assignments of interest and for the purposes of simplicity we will combine and refer to these various entities as Parker, Arcola and Fox.

sis. Written statements in reasonable detail setting forth the computation of net profits, if any, for such period were to be furnished to Arcola and Parker. However, Fox was not required to furnish a statement for any accounting period after 18 months when such statement would indicate that no payment would be due Arcola and Parker. Each written statement was to be deemed final and conclusive, unless, within two years from its rendition, a controversy arose with respect thereto and such controversy was submitted for determination to an independent firm of certified public accountants. Paragraph THIRD of exhibit A of the joint venture contains the paragraph providing for such independent determination of an accounting problem and is the alleged arbitration provision relied upon by Fox. It reads as follows: "In case any controversy shall arise between the parties hereto as to any action by Fox with respect to the receipts and proceeds from the distribution of the series or the expenses pertaining thereto, the questions in controversy shall be submitted for determination to certified public accountants in the City of Los Angeles, acceptable to the parties hereto, and if the parties cannot agree upon such accountants, then such Los Angeles firm of certified public accountants as shall be designated by the American Arbitration Association upon application by either party hereto. The decision of such independent firm of accountants on the matters submitted shall be final and conclusive upon the parties hereto. The fees and disbursements of such independent firm of accountants in connection with such determination shall be borne by the parties hereto in such manner as said accountants may deem fair and equitable."

The joint venture also provided that Fox would keep accurate records of gross receipts received for the series and the negative cost, distribution expenses, and distribution fees incurred in connection therewith. Arcola and/or Parker could, upon request, have an independent certified public accountant make examinations of such accounts and records if necessary to verify the accuracy of any statement submitted.

The complaint containing 11 causes of action is 65 pages in length. Only a brief summary of each cause of action is necessary for purposes of this opinion.

The first cause of action is for usury. Fox, under the joint venture, was required to loan Parker and Arcola moneys at 6 percent interest per year, however, it is alleged Fox charged plaintiffs in excess of 10 percent per annum on advances and loans.

The second cause of action is for declaratory relief regarding the character and nature of the joint venture agreement and the respective rights of the parties thereunder.

The third cause of action is for fraud by a fiduciary (Fox) and contains several separate specifications. Briefly, the principal charges were that Fox structured the joint venture so that the realization of "net profits" was unlikely; Fox fraudulently misrepresented to Parker and Arcola that loans and advances to the joint venture were much greater than actually made; Fox paid "sales commissions" prematurely as a result of a secret and undisclosed and unauthorized settlement of a purported dispute in connection with the series.

The fourth cause of action is for breach of contract by a fiduciary. Numerous specific breaches are alleged. One in particular claims that Fox improperly engaged in the production, syndication and distribution of a "spin-off" television series entitled "Young Dan'l Boone" which violated the agreement.

The fifth cause of action is for imposition of a constructive trust. It is alleged that Parker and Arcola, relying on the representations of Fox, transferred to the exclusive possession and control of Fox the negatives of each and every one of the 165 one-hour episodes of the Daniel Boone series. Fox received an estimated sum of $38,068,878 from the series which included a sum in excess of $7,787,795 fraudulently held by Fox as its profits. Parker and Arcola seek a constructive trust against this latter sum.

The sixth cause of action is for rescission and restitution and contains the usual allegations for such a cause of action. Parker and Arcola offer to restore all considerations received by them under the contract on condition that Fox restore to them the original negatives, prints, etc. of the 165 episodes of the Daniel Boone series.

The seventh cause of action is for dissolution of the joint venture and repeats all of the allegations of the previous causes of actions and concludes that the violations of the agreement alleged therein are such as to warrant dissolution of the joint venture.

The eighth cause of action is for an accounting of the "net profits" that exceeded $412,731.

The ninth cause of action is by Parker alone against Zieglar-Ross for breach of agency contract. It is alleged that Zieglar-Ross, as Parker's agent, represented Parker and counseled him in negotiating the joint venture with Fox. Zieglar-Ross then conspired with Fox and entered into a secret settlement which resulted in material alterations of the joint venture.

The 10th cause of action is by Parker against Fox for inducing a breach of the agency contract with Zieglar-Ross.

The 11th and final cause of action is by Parker against Zieglar-Ross for fraud.

## DISCUSSION

■ It is true, as Fox states, that it has long been the policy in California to favor arbitration as a means of providing a summary disposition of controversies. (*Lewsadder* v. *Mitchum, Jones & Templeton, Inc.* (1973) 36 Cal.App.3d 255, 259 [111 Cal.Rptr. 405].) However, arbitration is based on a contractual agreement to arbitrate and therefore the courts must look to the wording and the scope of the arbitration clause in the parties' contract to determine its application. (*Freeman* v. *State Farm Mut. Auto. Ins. Co.* (1975) 14 Cal.3d 473, 479 [121 Cal.Rptr. 477, 535 P.2d 341], citing *O'Malley* v. *Wilshire Oil Co.* (1963) 59 Cal.2d 482, 490 [30 Cal.Rptr. 452, 381 P.2d 188].) Here the trial court was required to ascertain whether the paragraph requiring a CPA to settle controversies connected with receipts and disbursements, was indeed a contractual agreement to arbitrate, and if so, its scope and application to issues raised by the complaint. The court's determination is found in certain key findings which we paraphrase and summarize as follows:

(1) The first two causes of action (usury and declaratory relief) are not subject to arbitration (this is conceded by Fox).

(2) The ninth and eleventh causes of action are against a third party (Fox concedes these two causes are not subject to arbitration).

(3) There are other issues between Fox, Parker, Arcola and a third party that are not subject to arbitration.

(4) The third and sixth causes of action (fraud and rescission) constitute grounds for revocation of the agreement.

(5) The seventh cause of action (dissolution of the joint venture) cannot be determined by the arbitrator. There is no language in the arbitration clause delineating the mechanics to be employed for winding up the business.

(6) Fox's verified answer alleges the joint venture has dissolved according to its own terms.

(7) The scope of the arbitration clause is far too narrow to encompass the issues. Certain issues involve financial issues but the causes of action go beyond mere financial questions which are not readily severable. Arbitration of any financial questions will not facilitate resolutions of the remaining issues.

The determination of this case is guided primarily by a very basic rule on appeal, namely, if there is substantial evidence to support the findings of the trial court we must affirm. Parker and Arcola concede that there are issues in the complaint, which if standing alone, could be determined by the CPA. However, they contend the trial court was correct in refusing to order arbitration because many of the key issues can only be decided by a court of law. They interpret the court's denial as requiring the matter to proceed to trial in the superior court where the judge will control the procedures necessary to decide the multitude of issues. If an accounting is necessary, the judge may appoint a CPA (if the parties cannot agree) or the judge may take advantage of the clause in question and have the American Arbitration Association pick the CPA.

Fox also agrees that some issues must be determined by the court, but maintains the principal issues will be decided by an accounting, therefore the entire proceeding should commence with arbitration and if the certified public accountant does not resolve all the controversies, then the court can pick up the remaining pieces.[3]

This is not the typical arbitration case where the right to arbitrate or not arbitrate is generally found in the arbitration clause of the parties' written agreement. Indeed, Parker and Arcola argue it is not even an arbitration clause (the word "arbitration" is not used, except in con-

---

[3]Fox, by an eight-page footnote to its opening brief makes lengthy quotations from two letters between the parties' counsel a few years before the complaint was filed. While these letters discussed accounting problems and requested detailed information on sales, receipts, etc., they do not, and could not, in light of the complaint establish that the controversies could be determined by a CPA.

junction with "American Arbitration Association" nor are the proceedings subject to arbitration rules), but is more akin to an audit of receipts and disbursements. The trial court agreed, at least in part, with Parker and Arcola. It recognized the paragraph in "question" as an "arbitration clause" but found it to be "far too narrow to encompass the issues present in this action."

Most arbitration clauses found in the contracts between parties seek to resolve *any* and *all* issues of controversy arising out of the contract.[4] The arbitration clause here states: "In case any controversy shall arise ... with respect to the receipts and proceeds from the distribution of the series or the expenses pertaining thereto, the questions in controversy shall be submitted for determination to certified public accountants in the City of Los Angeles ... and if the parties cannot agree upon such accountants, then such Los Angeles firm of certified public accountants as shall be designated by the American Arbitration Association ...." The controversies subject to arbitration are restricted to receipts and proceeds and expenses pertaining to distribution of the series. Fox claims the trial court should have given the wording of the paragraph a much broader meaning. Fox states: "Failing agreement on disputes by exercise of the unilateral audit right, the arbitration clause functions, in essence, as a 'super-audit,' with certified public accountants designated as arbitrators, to resolve such disputes between the parties." And in this same context Fox contends it is not the responsibility of the trial court to determine which issues are subject to "arbitrability" but that this is the accountants responsibility.[5]

We do not agree with Fox that the agreement gives to the accountant broad power to determine which issues are arbitrable. In

[4] It is interesting to note that the American Arbitration Association is named in the arbitration paragraph. The only authority however that the association has is to appoint a Los Angeles firm of certified public accountants. The association's proposed arbitration clause in existence at the time the present joint venture was negotiated was quite similar to the normal arbitration clause found in most contracts. It stated: "*Any controversy or claim* arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration in accordance with the Rules of the American Arbitration Association, and judgment upon the Award rendered by the Arbitrator(s) may be entered in any Court having jurisdiction thereof." (Italics added.) (See Johnson, *Preparation of Arbitrations Before the American Arbitration Association* (1964) 39 L.A. Bar Bull. 384, 385.) For some reason this clause was not used in the joint venture agreement thus lending credence to the trial court's determination that the parties intended a very limited form of arbitration.

[5] Fox claims Parker and Arcola should not be allowed to avoid arbitration just because they allege so many diverse issues because this will encourage such allegations by future plaintiffs who seek to escape arbitration. Not so, Fox could have avoided this problem by using an arbitration clause similar to the clause in footnote 4, *ante.*

*Freeman* v. *State Farm Mut. Auto. Ins. Co., supra,* 14 Cal.3d 473, 480, ` the court addressed this issue. After stating that Code of Civil Procedure section 1281.2 (see fn. 7, *infra*) requires the superior court to determine in advance whether there is a duty to arbitrate the controversy which has arisen, it holds: "The performance of this duty necessarily requires the court to examine and, to a limited extent, construe the underlying agreement. [¶] It is, of course, possible for the parties to agree that the arbitrator may determine the scope of his authority. 'The arbitrability of a dispute may itself be subject to arbitration if the parties have so provided in their contract.' [Citation.] Even then, *it is necessary for the court to examine the contract to ascertain whether the parties 'have so provided.'* [Citations.]" (Italics added.) Further comment on this issue is found in *Smith* v. *Superior Court* (1962) 202 Cal.App.2d 128 [20 Cal.Rptr. 512], wherein the court, quoting *J. H. Pomeroy & Co.* v. *Soule Steel Co.* (1958) 156 Cal.App.2d 691, 693 [320 P.2d 172], states (p. 133): "'We have been referred to no provision in the agreement providing that arbitrability shall be determined by the arbitrator rather than by the court. The clause "In case of any dispute between the parties as to the interpretation of this agreement or the performance of the same, either party may demand that the dispute be submitted to arbitration," is not sufficient to refer to the arbitrators *a matter which a reading of the agreement shows was not included in the agreement.* (Emphasis added.)'"

In our present case the agreement is silent on the accountant's authority to determine what issues are or are not arbitrable. Interestingly, Fox characterizes the paragraph in question as establishing a "super-audit." While we disagree that a super-audit was intended, even this description does not make the paragraph in question a broad arbitration clause. Audits are not very discretionary or elastic in nature, but are subject to standardized procedural rules. Not only could the parties disagree, and probably would, on the various issues in question, but it is probable that the accountant would be concerned with his authority to rule on the myriad issues raised by the complaint in view of the limited language of the clause. Judicial determination of the jurisdiction and scope of the accounting will be required.

■ The trial court's conclusion in finding 7 (*supra*) that the scope of the arbitration clause is far too narrow to encompass the issues is a clear finding that the parties did not agree to arbitrate most controversies alleged in the complaint. As stated earlier, we are not dealing with the usual, all-inclusive arbitration clause. The trial court did not accept

Fox's argument that an accounting of the receipts and disbursements relating to distribution of the series would reach the principal issues. The causes of action concerning usury, declaratory relief, fraud, fraud in the inducement, breach of contract, rescission, dissolution and winding up of the joint venture must be determined by a court of law.[6] Section 1281.2, subdivision (b) (see fn. 7, *infra*) of the Code of Civil Procedure specifically excludes arbitration when grounds exist for the revocation of the agreement. Two causes of action name a third party and section 1281.2, subdivision (c), give the court wide latitude in such situations. There is substantial evidence to support the findings of the trial court.

■ The chief issue in this case is whether the trial court has the discretion to order all issues raised in a plaintiff's complaint tried in a court of law when some of the issues are covered by an arbitration agreement.

Code of Civil Procedure section 1281.2,[7] subdivision (c) supplies the answer. It provides in pertinent part: "If the court determines that there are other issues between the petitioner and the respondent which are not subject to arbitration and which are the subject of a pending action

---

[6]Contrary to Fox's contention it seems quite likely that a winding-up of the joint venture will be required. This can only be accomplished under court supervision. See *Smith* v. *Superior Court, supra*, 202 Cal.App.2d 128, where, at page 132, the court stated: "The agreement herein fails to provide, as between the parties, any specific manner for the winding up of the business. Likewise, it contains no specific provisions entrusting to an arbitrator the matter of dissolution, or delineating the mechanics to be employed to effect a winding up of the business and a distribution of assets by him."

[7]Code of Civil Procedure section 1281.2 provides: "On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that:

"(a) The right to compel arbitration has been waived by the petitioner; or

"(b) Grounds exist for the revocation of the agreement.

"(c) A party to the arbitration agreement is also a party to a pending court action or special proceeding with a third party, arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact. For purposes of this section, a pending court action or special proceeding includes an action or proceeding initiated by the party refusing to arbitrate after the petition to compel arbitration has been filed, but on or before the date of the hearing on the petition. This subdivision shall not be applicable to an agreement to arbitrate disputes as to the professional negligence of a health care provider made pursuant to Section 1295.

"If the court determines that a written agreement to arbitrate a controversy exists, an order to arbitrate such controversy may not be refused on the ground that the petitioner's contentions lack substantive merit.

"If the court determines that there are other issues between the petitioner and the re-

... between the petitioner and the respondent and that a determination of such issues may make the arbitration unnecessary, the court may delay its order to arbitrate until the determination of such other issues or until such earlier time as the court specifies." The Legislature recognized that overlapping (arbitrable and nonarbitrable) issues will arise and has given the power to deal with the problem to the court. We do not believe, however, that the court can ignore an arbitration provision between the parties if a decision by arbitration on an arbitrable issue can be harmoniously used in the overall litigation. Here, we have such a situation. An accounting of receipts and disbursements connected with distribution of the series may well be required sometime during the litigation. This should be done in accordance with the provisions of the arbitration clause in the joint venture agreement. The timing and the scope of the accounting will be subject to the court's determination. By ordering the trial court to use this procedure if such an accounting is necessary, we recognize that we are disagreeing, in part, with Parker and Arcola's interpretation of the court's judgment that denied arbitration.[8] Except for this change, however, we agree with Parker and Arcola that the court has jurisdiction over the controversy, but shall use the certified public accountant required by the agreement if the need arises.

Except as modified above, the order is affirmed and respondents to receive costs of appeal.

Kaus, P. J., and Stephens, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied July 1, 1981.

---

spondent which are not subject to arbitration and which are the subject of a pending action or special proceeding between the petitioner and the respondent and that a determination of such issues may make the arbitration unnecessary, the court may delay its order to arbitrate until the determination of such other issues or until such earlier time as the court specifies.

"If the court determines that a party to the arbitration is also a party to litigation in a pending court action or special proceeding with a third party as set forth under subdivision (c) herein, the court (1) may refuse to enforce the arbitration agreement and may order intervention or joinder of all parties in a single action or special proceeding; (2) may order intervention or joinder as to all or only certain issues; (3) may order arbitration among the parties who have agreed to arbitrate and stay the pending court action or special proceeding pending the outcome of the arbitration proceeding; or (4) may stay arbitration pending the outcome of the court action or special proceeding."

[8]Parker and Arcola argued that the trial court could, if it wished, disregard the accounting clause and appoint its own accountant for the same purpose.