Filed 1/29/15  Pellitteri v. Wellquest International CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| MARCIA PELLITTERI, | B255062 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC490541) |
| v. | |
| WELLQUEST INTERNATIONAL, INC., et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Mark V. Mooney, Judge.  Reversed with directions.

Quinn Emanuel Urquhart & Sullivan, Steven G. Madison, Prashanth Chennakesavan for Defendants and Appellants.

Krane & Smith, Jeremy D. Smith for Plaintiff and Respondent.

_____

Appellants contend that the trial court improperly denied their motion to compel arbitration of a lawsuit brought by respondent. We find that the trial court read a controlling arbitration provision too narrowly and should have ordered certain issues be submitted to arbitration. Other issues, however, fall outside of the arbitration provision and therefore may be litigated in court.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Marcia Pellitteri filed this action in August 2012. Her first amended complaint (FAC), filed in August 2013, names as defendants Wellquest International, Inc. (WQ), Edward Mishan, Michael Ackerman, Knott Direct, Inc., Emson, Inc., and E. Mishan & Sons, Inc. Pellitteri alleges that all defendants are interrelated, and that each is the agent, principal, alter ego, and/or representative of the other. She further alleges she is a successor in interest to and assignee of Progressive Consulting Services, Inc. (PCS).

According to the FAC, Pellitteri is in the business of developing new products and advertising the products by, among other means, television infomercials. In 2002, Pellitteri agreed with Mishan and Ackerman to introduce to them third parties who developed various products so that Mishan and Ackerman could produce, package, and market the products. Mishan and Ackerman and affiliated entities were to pay Pellitteri and her affiliated entities royalties based on sales of the products. Along those lines, PCS entered into a written agreement with WQ in September 2002, whereby WQ would pay PCS royalties based on sales of third parties' products.

The FAC alleges that from 2002 to 2011 Pellitteri and/or PCS received compensation from defendants. In 2011, however, Pellitteri discovered that defendants breached their obligations by failing to pay royalties, by misrepresenting sales of products, by entering into undisclosed arrangements with third parties to circumvent the agreements between plaintiff and defendants, and by misappropriating plaintiff's intellectual property and product designs. The FAC contains a total of 11 causes of action pertaining to this alleged conduct, labeled as follows: (1) breach of oral joint venture agreement; (2) breach of written agreement; (3) breach of fiduciary duty; (4)

2

fraud; (5) conversion; (6) money had and received; (7) unjust enrichment; (8) quantum meruit; (9) accounting; (10) declaratory relief; and (11) unfair competition.

Following service of the FAC, defendants moved to compel arbitration and stay the litigation, contending that arbitration was mandated by the written agreement between WQ and PCS. Pellitteri opposed the motion, arguing that the arbitration clause was narrow and did not apply to any of the FAC's claims. The trial court denied defendants' motion in February 2014, finding that the arbitration provision applied only to claims relating to an "Audit Clause" in the agreement, and because Pellitteri had not exercised her rights under the Audit Clause, none of her claims was subject to arbitration.

Defendants timely appealed.

## DISCUSSION

### I. Relevant contractual provisions

The issue of whether arbitration of Pellitteri's claims is appropriate depends on the terms of the written agreement between WQ and PCS. Neither side disputes that, to the extent the arbitration clause applies, it covers all parties.

The written agreement contains two provisions directly addressing arbitration. They read in pertinent part as follows: "9. Audit Rights. PCS shall have the right to designate a certified public accountant(s), to audit WQ's records for The Product and Additional Products, no more than twice per calendar year . . . to ascertain the accuracy of each royalty compensation report. If the auditor discovers a discrepancy between the amount of royalties/compensation reported and WQ's records, the auditor shall promptly notify both PCS and WQ of the perceived discrepancy together with a detailing of the asserted discrepancy. . . . Should the auditor find a discrepancy and WQ disputes the discrepancy, WQ and/or WQ's designated accountant shall at it's [*sic*] own cost provide PCS's auditor within five (5) business days of discovery of the discrepancy with a breakdown as to why the discrepancy is not accurate. At that point WQ and/or WQ's accountant and PCS's auditor shall either agree or disagree. If they agree WQ shall pay the discrepancy upon the parties agreeing to such and if WQ and/or PCS does not agree,

3

the parties shall use an arbitrator as outlined in Paragraph 26 of this Agreement to arbitrate only for this purpose and to resolve the matter between them."

"26. <u>Arbitration</u>. Any controversy or claim arising out of or relating to the Audit Clause of this agreement, or the breach thereof, shall be settled by arbitration . . . and judgment upon the award rendered by the Arbitrator may be entered in any court having jurisdiction thereof. The arbitration shall be conducted in Los Angeles, California by a single, neutral, impartial arbitrator, independent of the parties, who shall be an accountant . . . . The Arbitrator shall have no power to alter or modify any express provision of this Agreement, or to make any award which by the terms effects any such alteration or modification. Nothing herein contained shall prevent any party from seeking injunctive or other equitable relief from a court of competent jurisdiction."

## II. **Arbitration of certain issues is required**

When the interpretation of an arbitration provision does not depend on extrinsic evidence, we review the trial court's denial of arbitration de novo. (*RN Solution, Inc. v. Catholic Healthcare West* (2008) 165 Cal.App.4th 1511, 1522 (*RN Solution*).) The trial court here did not rely on extrinsic evidence to determine the effect of the written agreement, and the parties agree that analysis of such evidence is unnecessary.

Because arbitration of disputes is a favored process, doubts as to the meaning and construction of an agreement are resolved in favor of arbitration. (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972; *Bono v. David* (2007) 147 Cal.App.4th 1055, 1062 (*Bono*).) In general, arbitration will be ordered "'unless it can be said with assurance that an arbitration clause is not susceptible to an interpretation covering the asserted dispute.'" (*Coast Plaza Doctors Hospital v. Blue Cross of California* (2000) 83 Cal.App.4th 677, 686.) Thus, the party opposing arbitration bears the burden of demonstrating that "an arbitration clause *cannot* be interpreted to require arbitration of the dispute." (*Id.* at pp. 686-687.) Nevertheless, parties will not be ordered to arbitrate a controversy that they have not agreed to arbitrate. (*Victoria v. Superior Court* (1985) 40 Cal.3d 734, 744.)

4

The parties here take different views of the written agreement's arbitration terms. Defendants characterize the language as broad, focusing on the phrase "Any controversy or claim arising out of or relating to . . . ." Defendants argue that similar phrases have been interpreted liberally to cover any cause of action "rooted" in an agreement. The cases defendants rely on for this point, however, examined arbitration clauses that applied to disputes relating to an "agreement." (See *Vianna v. Doctors' Management Co.* (1994) 27 Cal.App.4th 1186, 1188; *Merrick v. Writers Guild of America, West, Inc.* (1982) 130 Cal.App.3d 212, 217; *Buckhorn v. St. Jude Heritage Medical Group* (2004) 121 Cal.App.4th 1401, 1404, fn. 1.) In contrast, the arbitration clause here only pertains to disputes relating to the "Audit Clause." Pellitteri argues that the arbitration language thus must be interpreted narrowly, as an arbitration clause addressing "receipts and proceeds and expenses" was in *Parker v. Twentieth Century-Fox Film Corp.* (1981) 118 Cal.App.3d 895, 903-904 (*Parker*).)

Neither side is quite correct. The written agreement's arbitration language is narrow in that it only applies to the Audit Clause, a subpart of the entire agreement. However, its application with respect to the Audit Clause is broad, as it covers matters "relating to" the Audit Clause. (See *Chelsea Family Pharmacy v. Medco Health Solutions* (10th Cir. 2009) 567 F.3d 1191, 1199 (*Chelsea*) ["ordinary meaning of the phrase 'relating to' is broad"]; *United Communications Hub, Inc. v. Qwest Communs., Inc.* (9th Cir. 2002) 46 Fed.Appx. 412, 413 ["'relating to' . . . has a broad and inclusive meaning"][1]; *Bono*, *supra*, 147 Cal.App.4th 1055, 1067; cf. *Parker*, *supra*, 118 Cal.App.3d 895, 903-904, fn. 4 [audit and arbitration clause pertained only to dispute over receipts, proceeds, and expenses, not issues "relating to" such matters].)

We therefore examine the factual allegations of the FAC—not the legal labels attached to them—to determine arbitrability. (*Chelsea*, *supra*, 567 F.3d 1191, 1197; *Medtronic AVE v. Advanced Cardiovascular Systems* (3d Cir. 2001) 247 F.3d 44, 55.)

---

[1]     Unpublished federal court opinions may properly be considered. (*Farm Raised Salmon Cases* (2008) 42 Cal.4th 1077, 1096, fn. 18.)

"Insofar as the allegations underlying the [claims] touch matters covered" under the arbitration provision, we resolve any doubts in favor of arbitration of those matters. (*Mitsubishi Motors v. Soler Chrysler-Plymouth* (1985) 473 U.S. 614, 624, fn. 13.)

Although the FAC is somewhat lengthy, it alleges only a few actual matters of dispute. Two of these matters are defendants' alleged failure to pay royalties or other required compensation to Pellitteri, and their alleged failure to provide accurate reporting and accounting of profits and sales. These are clearly matters relating to the Audit Clause, which expressly addresses records and royalties, and therefore they are arbitrable under the arbitration provision.

Pellitteri argues that the arbitration provision cannot apply because the Audit Clause contemplates a process where PCS appoints an auditor to review WQ's records and confer with WQ's accountant regarding any royalty or compensation discrepancies. Pellitteri contends that arbitration would be appropriate only if, following this process, PCS's auditor and WQ's accountant were unable to resolve any discrepancies. She argues that the Audit Clause does not apply here since the FAC does not allege that PCS ever engaged in an audit. We find that this argument is based on an incomplete reading of the Audit Clause, which provides that if PCS and WQ disagree on the amount of royalties or other compensation calculated, the dispute shall be arbitrated. By the filing of this suit, Pellitteri declared that she disagrees with WQ regarding the calculation of royalties or other compensation; this point is illustrated in the declaratory relief cause of action, where Pellitteri alleges that an actual controversy exists pertaining to her entitlement to royalties. The fact that Pellitteri, through PCS, chose not to engage in the audit process before filing suit does not mean that she can avoid arbitration of an issue covered by the audit clause.[2] Her allegations that defendants failed to pay proper

---

[2]     Nor does the written agreement's venue selection clause (which provides that any suit may be instituted in United States District Court) nullify the arbitration provision. (See *Dream Theater, Inc. v. Dream Theater* (2004) 124 Cal.App.4th 547, 556 [venue provisions did not limit scope of arbitration clause].)

royalties or provide accurate accountings are matters relating to the Audit Clause and thus arbitrable.

Our review of the FAC, however, does reveal certain disputes that are not subject to arbitration. The allegations that defendants (i) entered into secret third party arrangements to avoid their obligations, (ii) misappropriated plaintiff's intellectual property and product designs, and (iii) used third parties as shells to circumvent the agreement, are not matters relating to the Audit Clause. Unlike Pellitteri's other allegations, these matters do not by their terms pertain to a dispute over royalties, compensation, or related records.[3] The parties could have agreed to a typically broad arbitration clause, one that applied to all disputes relating to the agreement. Because they did not, these matters are not subject to arbitration.[4] (See *Bono*, *supra*, 147 Cal.App.4th 1055, 1067 [finding relatively narrow arbitration clause covering "'the construction and application of any provision of this Agreement'" did not apply to defamation action]; *Parker*, *supra*, 118 Cal.App.3d 895, 903 [audit and arbitration clause was narrower than "[m]ost arbitration clauses . . . [that] seek to resolve *any* and *all* issues of controversy arising out of the contract"].)

This presents a situation where some disputes are subject to arbitration while others are not. In such a setting, the trial court should order arbitrable claims to arbitration, and stay litigation of the arbitrable claims pending finality of the arbitration.

---

[3]   Instead, these disputes appear to be at least partially subject to a different clause in the written agreement: "12. Non-Circumvention: WQ agrees that it will not circumvent, avoid, bypass and/or interfere with any of PCS's contractual relations with any of The Introduced Parties . . . ." This clause is not mentioned in the arbitration provision as being subject to arbitration.

[4]   It is possible that determination of these nonarbitrable issues will lead to a scenario in which royalties or related compensation need to be calculated based on resolution of the nonarbitrable claims. At that point, if there is disagreement among the parties, the Audit Clause and related arbitration provision may be triggered, and, if so, calculation of these royalties and other compensation would be subject to the Audit Clause and arbitration provision.

(*RN Solution*, *supra*, 165 Cal.App.4th 1511, 1521.) The trial court may delay its order to arbitrate the arbitrable claims, but only if adjudication of the nonarbitrable claims might make arbitration of the other claims unnecessary. (*Ibid.*; Code Civ. Proc., § 1281.2, subd. (c).[5]) Otherwise, "the arbitrable claims would proceed to arbitration and the nonarbitrable claims would continue to be litigated in court unless a party moved successfully pursuant to [Code of Civil Procedure] section 1281.4, to stay further litigation of such nonarbitrable claims." (*RN Solution*, *supra*, 165 Cal.App.4th at pp. 1521-1522.[6]) Upon remand, the trial court may consider any motion to stay and determine the optimal sequence of arbitration and litigation of this matter.

## DISPOSITION

The order denying defendants' motion to compel arbitration is reversed. The trial court is to enter an order compelling arbitration and staying court proceedings on all matters other than claims that defendants (i) entered into secret third party arrangements to avoid their obligations, (ii) misappropriated plaintiff's intellectual property and product designs, and (iii) used third parties as shells to circumvent the agreement. The trial court may decide whether the arbitration order should be delayed pursuant to Code

---

[5]   The third paragraph of Code of Civil Procedure section 1281.2, subdivision (c) provides: "If the court determines that there are other issues between the petitioner and the respondent which are not subject to arbitration and which are the subject of a pending action or special proceeding between the petitioner and the respondent and that a determination of such issues may make the arbitration unnecessary, the court may delay its order to arbitrate until the determination of such other issues or until such earlier time as the court specifies."

[6]   Code of Civil Procedure section 1281.4 provides, in pertinent part: "If a court of competent jurisdiction, whether in this State or not, has ordered arbitration of a controversy which is an issue involved in an action or proceeding pending before a court of this State, the court in which such action or proceeding is pending shall, upon motion of a party to such action or proceeding, stay the action or proceeding until an arbitration is had in accordance with the order to arbitrate or until such earlier time as the court specifies. . . . [¶] If the issue which is the controversy subject to arbitration is severable, the stay may be with respect to that issue only."

8

of Civil Procedure section 1281.2, subdivision (c), or, upon any motion brought pursuant to Code of Civil Procedure section 1281.4, the trial court may stay litigation of the nonarbitrable claims pending arbitration.  Alternatively, the trial court may order that arbitration proceed simultaneously with litigation of the nonarbitrable claims.

The parties shall bear their own costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


BOREN, P.J.

We concur:


CHAVEZ, J.


HOFFSTADT, J.