Filed 9/24/21  Future Energy Overseas Group v. Entravision Communications Corp. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| FUTURE ENERGY OVERSEAS GROUP, INC., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> ENTRAVISION COMMUNICATIONS CORP. et al., <br><br> Defendants and Appellants. | B308533 <br><br> (Los Angeles County Super. Ct. No. 20STCV04768) |

APPEAL from an order of the Superior Court of Los Angeles County, Maureen Duffy-Lewis, Judge.  Vacated and remanded with directions.

King & Spalding and Arwen R. Johnson; Boies Schiller Flexner, Eric Brenner and Julian Beach for Defendants and Appellants.

Eisner, Jeremiah Reynolds, Ashlee N. Lin, Benjamin G. Kassis and Rosie Cole for Plaintiff and Respondent.

---

## INTRODUCTION

Appellant Entravision Communications Corp. purchased a digital-media advertising business from respondent Future Energy Overseas Group, Inc. and others, with Future Energy serving as the sellers' representative.[1] As part of the transaction, the parties executed an "Earn-Out" agreement, under which Entravision was to pay the sellers additional sums if the business met certain performance thresholds during defined periods. Under the agreement, Entravision was to provide periodic Earn-Out statements setting forth its calculations of the business's performance and the sellers' entitlement to an earn-out payment, if any, for the relevant period. If the sellers disagreed, they were to submit their "Disputed Items" to Entravision. An alternative dispute resolution (ADR)

---

[1] Entravision made this acquisition through its subsidiary, appellant Headway Spain Digital Technology Services, S.L.U. For the sake of simplicity, we refer to both entities as Entravision.

2

provision in the agreement instructed that unresolved Disputed Items be submitted to an accounting firm.

Disputes subsequently arose between the parties regarding the sellers' entitlement to Earn-Out payments. Future Energy submitted 17 Disputed Items challenging Entravision's Earn-Out statement for one of the relevant periods, but the parties could not resolve their differences. Future Energy then filed this action in its capacity as the sellers' representative, seeking maximum Earn-Out payments for all periods, alongside other relief. Among other things, it alleged that Entravision had breached an "oral and implied" agreement regarding the treatment of certain operating expenses for purposes of the Earn-Out payment calculations.

Entravision then moved to compel ADR as to the Disputed Items under the Earn-Out agreement and to stay the litigation. After determining that the agreement's ADR provision was not an arbitration clause in the traditional sense, and that the action involved many non-accounting issues that were not subject to the ADR provision, the trial court denied Entravision's motion to compel, providing that non-arbitrable claims would be litigated first, and remaining accounting issues could then be referred to the parties' accounting firm. The court did not specify the issues it determined were subject to the ADR provision.

Entravision challenges the court's ruling on appeal. It claims the court erroneously ruled the Earn-Out agreement's ADR provision unenforceable. While Future Energy

3

contends the court merely delayed the ADR process under Code of Civil Procedure section 1281.2 pending the litigation of non-arbitrable claims in court, Entravision asserts the court could not have exercised discretion under the statute without first distinguishing between arbitrable and non-arbitrable issues.[2]  Finally, Entravision claims that even if the court acted within its discretion in delaying the ADR process, it erred by failing to identify the issues subject to ADR and by failing to stay court proceedings as to those issues.

We conclude the trial court properly recognized that the parties' ADR provision was enforceable, but exercised its discretion under section 1281.2 to delay the ADR process pending adjudication of the non-arbitrable issues.  However, we agree that the court was required to identify the issues subject to ADR, and to grant the motion to compel ADR and stay court proceedings as to those issues.  We therefore reverse the court's denial of Entravision's motion to compel ADR and remand the matter to the trial court with instructions to perform these necessary tasks.

---

[2]     Undesignated statutory references are to the Code of Civil Procedure.

4

## BACKGROUND

### A. The Parties' Transaction and the Earn-Out Agreement

In 2017, Entravision acquired a group of affiliated companies that provided digital-media advertising services from several individuals and corporate affiliates. One of the sellers, Future Energy, was designated as the sellers' representative, authorized to represent the sellers in matters relating to the transaction's governing documents. As part of the transaction, the parties executed the Earn-Out agreement, under which Entravision was to pay the sellers additional sums for each year in 2017-2019 (referred to in the agreement as "Periods" 1-3) in which the acquired companies achieved specified financial targets. If the acquired companies reached certain performance thresholds for the entire three-year period, the agreement provided for an "Overachievement Bonus."

Under the Earn-Out agreement, Entravision was to provide a yearly statement setting forth its calculations of the business's performance and the earn-out payment to which it believed the sellers were entitled. If Future Energy disagreed with this statement, it was to submit a list of "'Disputed Items'" to Entravision, specifying the basis for each item. If the parties could not come to an agreement, remaining Disputed Items would be submitted to ADR before an accounting firm. Section 2(c) of the agreement stated: "If the parties are unable to resolve any Disputed Items . . . , then such Disputed Items shall be submitted to

[an] Accounting Firm . . . which shall be jointly engaged by [Entravision] and [Future Energy] and shall act as an expert in accounting and not an arbitrator to promptly review the Earn-Out Statement and resolve the Disputed Items. . . . In resolving any Disputed Item, the Accounting Firm . . . will base its determination solely on written materials submitted by [Entravision] and the [Future Energy] (and not on any independent review)."

### B. The Parties' Disputes and Future Energy's Complaint

A series of disputes later arose about the sellers' entitlement to Earn-Out payments. After Period 1, the parties agreed that the sellers were entitled to the maximum earn-out payment, and Entravision made a partial payment of that amount. However, in May 2019, Entravision claimed it had discovered undisclosed accounting deficiencies that caused it to conclude that the sellers were not entitled to Earn-Out payments for Periods 1 and 2 (Period 3 was still in progress). Entravision provided an Earn-Out statement for Period 2, reflecting its determination that the acquired companies had not met the performance thresholds. Future Energy responded with 17 Disputed Items challenging Entravision's Earn-Out statement for Period 2.[3] Among other things, the Disputed Items contested Entravision's

---

[3]     Future Energy initially submitted 16 Disputed Items, to which Entravision subsequently added an additional item.

6

adjustments relating to allegedly duplicated invoices and certain uncollected invoices (Item No. 1), overstatement of accounts receivable balances (Item No. 5), value-added tax obligations (Item No. 6), unrecorded sums owed to clients (Item No. 12), and foreign currency losses (Item No. 17).

In February 2020, after the parties failed to resolve their differences, Future Energy, in its capacity as the sellers' representative, filed this action against Entravision and others.[4] The complaint asserted breach of contract and fraudulent misrepresentation, among other claims, and sought the remainder of the Earn-Out payment for Period 1, the maximum payments for Periods 2 and 3, and the maximum overachievement bonus, among other prayers for relief. Future Energy alleged, inter alia, that the acquired companies had met the performance thresholds for all three periods and the overachievement bonus. The complaint included many allegations that were not based on accounting principles. For example, Future Energy asserted that at a November 2018 meeting, the parties entered into an "oral and implied contract" regarding the treatment of certain operating expenses for purposes of the Period 2 Earn-Out

---

[4] The parties initially sought to resolve their dispute through mediation and selected an accounting firm in case the mediation proved unsuccessful. In January 2020, before the mediation could take place, Entravision filed a complaint against the sellers in federal court, seeking, inter alia, rescission of the parties' agreement as to the Period 1 Earn-Out payment. It later voluntarily dismissed its federal action. After the mediation failed, Future Energy brought this action.

7

calculation, including that Entravision would exclude amounts owed in value-added taxes and expenses related to foreign currency losses. It claimed Entravision had breached this contract. Additionally, Future Energy asserted that if the sellers were not entitled to the Period 2 Earn-Out payment, Entravision had knowingly or recklessly misrepresented that they would be and used those misrepresentations in extracting certain concessions from the sellers.

### C. Entravision's Motion to Compel ADR and the Trial Court's Ruling

In response to Future Energy's complaint, Entravision moved to compel ADR as to the Period 2 Disputed Items and to stay the litigation.[5] Future Energy opposed this motion, contending, inter alia, that the Earn-Out agreement's ADR provision covered only accounting issues and thus reached only three Disputed Items: No. 1, involving allegedly duplicated invoices and the accounting treatment of certain uncollected invoices; No. 5, concerning the treatment of

---

[5] Entravision's motion addressed Period 3 and the overachievement bonus only to assert that they were not yet ripe for resolution, as Entravision had not yet issued its Earn-Out statement for Period 3. Entravision later issued the Period 3 Earn-Out statement, determining that the sellers were not entitled to an Earn-Out payment, and Future Energy disputed Entravision's calculations. However, Entravision did not file a new motion to compel ADR targeting Period 3 issues, and the Disputed Items for that period are not in the record on appeal.

overstated accounts receivable balances; and No. 12, concerning the treatment of unrecorded sums owed to clients.

The remaining issues, it contended, were legal in nature, and thus not subject to the ADR process. Future Energy claimed than the court should allow the litigation to proceed as to non-arbitrable issues. In its reply, Entravision asserted that the ADR provision mandated that all 17 Disputed Items be resolved by an accounting firm, regardless of their nature. Alternatively, Entravision claimed that the Disputed Items all presented issues within an accounting firm's expertise.

The trial court held a hearing on Entravision's motion to compel ADR in September 2020. After hearing the parties' arguments, the court stated it intended to deny the motion: "There's no clear-cut arbitration clause in the agreement. At most, in this court's view, there's a clause that directs the parties to an expert accounting. But that's not an arbitrator, so to speak, in the classic term. And I find that this case is more than just a simple appraisal. There could be many actionable claims for which damages could be more than an accounting. And I don't know if that's true or not at this time, but that's the benefit of litigation. . . . [W]hen those claims are litigated and dismissed or subjected to some form of adjudication . . . or denied at trial, then the court could send any remaining issues of appraisal to an expert accounting firm." The court later issued a minute order denying Entravision's motion to compel ADR, stating:

"There is no arbitration clause in the Agreement.  [¶] Further, there are many actionable claims for which the damages could be more than an accounting.  Those claims to be litigated first; then the court can refer remaining issues of appraisal to the expert accounting firm."[6]  The court did not address Entravision's request to stay the litigation of issues subject to ADR.  This appeal followed.

## DISCUSSION

On appeal, Entravision challenges the trial court's order on its motion to compel ADR, arguing that the court erroneously ruled the Earn-Out agreement's ADR provision unenforceable.  In response to Future Energy's contention that the court merely delayed the ADR process pending the litigation of non-arbitrable claims in court, Entravision contends that such a ruling would be similarly erroneous because the court was first required to distinguish between arbitrable and non-arbitrable issues.  Finally, Entravision claims that even if the court acted within its discretion in delaying the ADR process, it erred by failing to identify the arbitrable issues and stay court proceedings as to those issues.

---

[6]     Following the trial court's ruling, Entravision filed a cross-complaint seeking, inter alia, a declaration that the parties' agreement as to the Period 1 Earn-Out payment was unenforceable and that the sellers' entitlement to it should be determined in ADR.

10

As discussed below, we conclude the court properly recognized that the parties' ADR provision was enforceable, but validly exercised its discretion under section 1281.2 to delay the ADR process pending adjudication of the non-arbitrable issues.  However, we agree with Entravision that the court was required to identify the issues subject to ADR and to grant a stay of litigation as to those issues.

## *A. Governing Principles*

Section 1281.2 requires a court to order arbitration of a particular controversy if it determines that an agreement to arbitrate it exists.  (*Ibid*.)  The statute embraces not only traditional arbitrations -- involving any issue arising out of a particular controversy -- but also alternative forms of dispute resolution, such as valuations, appraisals, and audits, in which an independent expert resolves specific accounting questions.  (*Coopers & Lybrand v. Superior Court* (1989) 212 Cal.App.3d 524, 534.)  While a court is generally required to grant a motion to compel arbitration if it concludes that an enforceable agreement to arbitrate exists, section 1281.2 affords courts discretion to delay the arbitration if the adjudication of the non-arbitrable claims in court "may make the arbitration unnecessary."  (§ 1281.2.)[7]

When a trial court orders arbitration of an issue involved in an action or proceeding pending before the court,

---

[7]  The parties mistakenly cite this provision as subdivision (d) of section 1281.2.

11

it "shall, upon motion of a party . . . , stay the action or proceeding until the arbitration is had . . . ." (§ 1281.4, par. 1.) If the issue subject to arbitration is severable, the court may limit the stay to that issue. (§ 1281.4, par. 3.) Thus, "[w]hen a party brings a motion to compel arbitration under circumstances in which there may be arbitrable and nonarbitrable issues, the trial court should 'first determine[ ] the arbitrable and nonarbitrable claims alleged in the complaint, order[ ] all of the arbitrable claims to arbitration, and stay[ ] all such claims pending arbitration.'" (*Association for Los Angeles Deputy Sheriffs v. County of Los Angeles* (2015) 234 Cal.App.4th 459, 468, quoting *RN Solution, Inc. v. Catholic Healthcare West* (2008) 165 Cal.App.4th 1511, 1521 (*RN Solution*).)

"We review the scope of an arbitration provision de novo when, as here, that interpretation does not depend on conflicting extrinsic evidence." (*RN Solution*, *supra*, 165 Cal.App.4th at 1522.) In construing the agreement's language, we must "give effect to every part [of it], if reasonably practicable, each clause helping to interpret the other." (Civ. Code, § 1641.)

### B. The Trial Court Properly Recognized that the ADR Provision was Enforceable and Exercised its Discretion to Delay the ADR Process Under Section 1281.2

Entravision contends the trial court erroneously determined that the Earn-Out agreement's ADR was

12

unenforceable. Alternatively, Entravision suggests it was error to delay the ADR process pending the litigation of issues that fell outside its scope. We disagree.

Initially, the trial court recognized that the agreement's ADR provision was enforceable, providing in its order that following the litigation of non-accounting issues, remaining accounting issues would be referred to the parties' accounting firm. Thus, the court merely delayed, rather than precluded, the ADR process.

Entravision highlights the court's statement that the agreement contained "no arbitration clause." When viewed in context, however, this statement referred only to the scope of the ADR provision: the court correctly determined that unlike a traditional arbitration clause, the parties' ADR provision encompassed only accounting issues, noting at the hearing on Entravision's motion that the provision "direct[ed] the parties to an expert accounting [firm]," rather than to an arbitration in "the classic" sense.[8]

---

[8] Relying on the ADR provision's instruction that that unresolved Disputed Items "shall be submitted to the Accounting Firm," Entravision contends this provision encompassed all unresolved Disputed Items, no matter whether they involved accounting or legal issues. But this contention ignores the provision's further instructions that the accounting firm "shall act as an expert in accounting and not an arbitrator" and "will base its determination solely on written materials submitted by Buyer and the Seller Representative." Read as a whole, the ADR provision was clear that the firm was to address only those issues that could be resolved through the application of accounting principles.

13

Moreover, we conclude the trial court's decision to delay the ADR process was within its discretion under section 1281.2. Future Energy contends, and Entravision does not dispute, that section 1281.2 authorizes courts to delay arbitration if non-arbitrable issues may narrow the issues subject to ADR. It is likewise undisputed that Future Energy's complaint included issues not subject to ADR. At least one of those non-arbitrable issues had the potential to significantly narrow the issues subject to ADR: the complaint alleged that in late 2018, the parties entered into an "oral and implied contract" regarding the treatment of certain operating expenses for purposes of determining the sellers' eligibility for the Period 2 Earn-Out payment. If enforceable, the contract would control the accounting firm's treatment of the relevant expenses in the ADR process, rendering the firm's resolution of those issues unnecessary. For example, the alleged 2018 contract would require Entravision to exclude foreign currency losses from its Earn-Out calculation, thus resolving Disputed Item No. 17, without regard to otherwise applicable accounting principles.

Entravision maintains the trial court could not have exercised discretion under the statute, asserting that the court never distinguished between arbitrable and non-arbitrable issues and that this was a precondition for any exercise of the court's discretion. We are unpersuaded. While the statement in the court's minute order that there were many claims for which "the damages could be more than an accounting" was imprecise, we read it to mean that

14

there were many issues that did not involve accounting questions and thus were not subject to the Earn-Out agreement's ADR provision. At the hearing on Entravision's motion, the court made clear its determination that litigation of non-arbitrable issues could moot issues subject to ADR: "when those claims [i.e., the non-arbitrable claims] are litigated and dismissed or subjected to some form of adjudication . . . or denied at trial, then the court could send *any remaining* issues of appraisal to an expert accounting firm." (Italics added.) To the extent Entravision contends an on-the-record classification of each issue as either arbitrable or non-arbitrable was a prerequisite to the exercise of the court's discretion, it cites no authority supporting this proposition, and we are aware of none.[9] Accordingly, we find no error in the court's decision to delay the ADR process.

### *C. The Trial Court Failed to Follow the Statutory Procedures as to the Issues Subject to ADR*

We agree with Entravision that the trial court was required to identify the issues subject to ADR and stay the litigation as to those issues. When faced with a motion to compel arbitration in an action involving both arbitrable and

---

[9] As discussed below, we conclude the court *was* required to specify the issues subject to the ADR in ruling on Entravision's motion. That obligation, however, was not a prerequisite to the court's exercise of discretion to delay the ADR process.

15

non-arbitrable issues, the court must determine the arbitrable and non-arbitrable issues raised by the complaint, order all arbitrable issues to arbitration, and stay those issues pending arbitration. (*RN Solution, supra*, 165 Cal.App.4th at 1521.) The court's authority to delay arbitration, where applicable, does not absolve it of these responsibilities: litigation as to arbitrable issues must be stayed. (See § 1281.4, pars. 1 & 3; *Heritage Provider Network, Inc. v. Superior Court* (2008) 158 Cal.App.4th 1146, 1153 [single arbitrable issue requires stay of litigation, at least as to that issue].) Without identifying and staying the litigation of arbitrable issues, court proceedings could encroach on the arbitration's domain and render it ineffective. (*Id.* at 1152.)

Citing *Parker v. Twentieth Century-Fox Film Corp.* (1981) 118 Cal.App.3d 895 (*Parker*), Future Energy contends the trial court need not identify the issues subject to ADR at this time, but instead may do so at some point during the litigation.[10] *Parker* does not support this position.

---

[10] Indeed, at oral argument, Future Energy suggested the issues subject to ADR *cannot* be identified at this point, because the litigation of non-arbitrable issues could render the ADR process unnecessary as to otherwise arbitrable issues. This contention misses the mark. That a certain issue is arbitrable simply means that it is governed by the ADR provision, regardless of whether arbitration of the issue ultimately proves unnecessary. Nothing prevented the trial court from identifying the issues subject to ADR at the time of its ruling.

16

In *Parker*, the parties executed a joint venture agreement containing an ADR provision, which required that controversies relating to receipts and proceeds from the joint venture be submitted to an accountant. (*Parker*, *supra*, 118 Cal.App.3d at 898-899.) After the plaintiffs filed a complaint asserting numerous causes of action, the trial court denied the defendant's request to send the entire action to arbitration. (*Ibid.*) According to the Court of Appeal's "paraphrase and summar[y]" of the trial court's findings (*id.* at 901), the lower court concluded that most of the complaint's causes of action -- including claims concerning usury, fraud, rescission, and winding up of the joint venture -- were not arbitrable (*id.* at 901-902). The trial court also concluded that some issues involved financial questions, but that "the causes of action [went] beyond mere financial questions" and the ADR provision was "far too narrow to encompass the issues." (*Id.* at 902.)

On appeal, the defendant in *Parker* contended that the principal issues in the action must be decided through an accounting, that the accountant should decide which issues were arbitrable, and thus that the entire action should be referred to the accountant. (*Parker*, *supra*, 118 Cal.App.3d at 902, 904.) The plaintiffs, on the other hand, argued that the lower court could disregard the parties' ADR clause and appoint its own accountant, as necessary. (*Parker*, *supra*, at 906, fn. 8.)

The Court of Appeal rejected both positions. It concluded that the trial court "was required" to determine

17

whether there was an enforceable ADR provision, "and if so, its scope and application to issues raised by the complaint." (*Parker*, *supra,* 118 Cal.App.3d at 901.) It further concluded that the trial court correctly identified non-arbitrable issues and noted the court's authority to delay the ADR process if non-arbitrable issues could render it unnecessary. (*Id.* at 905.) However, the *Parker* court explained that to the extent an accounting was necessary, the trial court could not disregard the ADR provision, as the plaintiffs maintained it could. In that context, the Court of Appeal stated that "[t]he timing and the scope of the accounting will be subject to the court's determination." (*Id.* at 906.)

Future Energy points to *Parker*'s statement regarding the timing and scope of the accounting as establishing that a trial court need not distinguish between arbitrable and non-arbitrable issues at the outset of the litigation. Yet the Court of Appeal was clear that the lower court "was required," in ruling on the defendant's petition to compel arbitration, to determine the ADR clause's application to the issues in the complaint. (*Parker*, *supra,* 118 Cal.App.3d at 901.) In context, the *Parker* court's subsequent reference to the trial court's determination of the scope of the accounting referred to the *necessity* of the accounting, rather than to the identification of arbitrable issues. And unlike Entravision, the defendant in *Parker* made no complaint that the trial court had failed to identify sufficiently the arbitrable issues or to stay the litigation as to them. It was therefore unnecessary for the Court of Appeal to elaborate on the

18

timing of the trial court's obligation to specify which issues would be subject to ADR.

Here, the trial court did not follow the statutory procedures with respect to the issues subject to ADR. (See § 1281.4, pars. 1 & 3.) We therefore remand the matter with instructions that it perform these necessary tasks. On remand, the court should identify those Disputed Items (or portions thereof) that raise accounting issues and are thus subject to the ADR provision. The court should then stay the litigation as to those issues, while allowing the litigation of non-arbitrable issues to proceed in accordance with the court's decision to delay the ADR process. For example, if Disputed Item No. 6, pertaining to value-added tax obligations, raises accounting issues subject to ADR, the court should identify it as such and stay it, to prevent the parties from attempting to litigate those accounting issues in court. The litigation could then proceed as to non-arbitrable, legal issues, including whether the alleged November 2018 implied contract precluded Entravision's inclusion of amounts owed in value-added taxes. As discussed above, the litigation of non-arbitrable issues may render certain arbitrable issues moot.[11]

---

[11]     Any issues relating to Period 3 are not properly before us.

19

## DISPOSITION

The trial court's denial of Entravision's motion to compel ADR of the 17 Disputed Items is vacated, and the matter is remanded to the trial court with instructions to enter an order (1) identifying the issues subject to ADR, (2) granting Entravision's motion to compel ADR as to those issues and staying court proceedings as to them, and (3) delaying the ADR process pending litigation of non-arbitrable issues. Each party shall bear its own costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

MANELLA, P. J.

We concur:

COLLINS, J.

CURREY, J.

20